**ACTION ALLIANCE OF SENIOR CITIZENS OF GREATER PHILADELPHIA, et al., Appellants**

v.

**Margaret HECKLER, et al.**

**No. 85–5156.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1986.

Decided May 2, 1986.

**934**

Burton D. Fretz, with whom Bruce M. Fried, was on brief, for appellants.

Robert Wolff, Atty., Dept. of Justice, with whom Richard K. Willard, Acting Atty. Gen., Joseph E. diGenova, U.S. Atty., and John F. Cordes, Jr., Atty., Dept. of Justice, were on brief, for appellees.

Before EDWARDS and GINSBURG, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This case presents a challenge to the Secretary of Health and Human Services' implementation of the Age Discrimination Act, 42 U.S.C. § 6101 *et seq.* (1982) (ADA or Act). The district court dismissed the action on the grounds that the plaintiffs lacked standing to pursue some of their claims and that the remainder of the case had become moot. We affirm in part, reverse in part, and remand.

**I.**

The Age Discrimination Act was passed in 1975. *See* Age Discrimination Act of 1975, Pub. L. No. 94–135, 89 Stat. 728 (codified as amended at 42 U.S.C. § 6101 *et seq.* (1982)). The Act's purpose is "to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101 (1982).[1] The ADA is implemented by the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The Age Discrimination Act, 42 U.S.C. § 6101 *et seq.* (1982) (ADA), should be distinguished from the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1982) (ADEA). The ADA prohibits discrimination with regard to any type of benefit but applies only to "programs or activities receiving Federal financial assistance." *See* 42 U.S.C. § 6102 (1982). The ADEA, on the other hand, proscribes discrimination only in relation to employment, but it applies to all employers, public or private, who affect commerce and have more than twenty employees. *See* 29 U.S.C. § 630(b) (1982).

The two Acts are modeled on different portions of the Civil Rights Act of 1964. Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.* (1982), prohibits discrimination on the basis of

race, color, or national origin in any "program or activity receiving Federal financial assistance." *Id.* at § 2000d; *see also* Education Amendments of 1972, 20 U.S.C. § 1681 (1982) (prohibiting discrimination on the basis of sex in an "educational program or activity receiving Federal financial assistance"). The ADA follows this first model.

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (1982), prohibits discrimination by any employer with respect to an employee's "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." *Id.* at § 2000e–2(a)(1). An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees." *Id.* at § 2000e(b). The ADEA follows this second model.

Secretary of Health and Human Services (HHS),[2] whose initial responsibility is to issue a set of government-wide regulations; these general regulations, upon publication, serve as a model for the drafting of agency-specific regulations by each federal agency that administers any program of financial assistance. *See id.* at § 6103(a). Because it is one such agency, HHS must also issue its own specific regulations. To promote consistent implementation of the Act, all agency-specific regulations, once formulated, are submitted to the Secretary of HHS for approval. *See id.* at § 6103(a)(4).

The Secretary published the final, government-wide ADA regulations in June 1979 and the final, HHS-specific regulations in December 1982. *See* 44 Fed.Reg. 33776 (1979) (to be codified at 45 C.F.R. § 90) (government-wide regulations); 47 Fed.Reg. 57858 (1982) (to be codified at 45 C.F.R. § 91) (HHS-specific regulations). At the time appellants commenced this action, in February 1983, the Secretary had not yet acted on proposed regulations that nineteen other agencies had submitted for approval. *See Action Alliance of Senior Citizens v. Heckler,* No. 83–0285, slip op. at 3, 6 (D.D.C. Dec. 28, 1984), *reprinted in* Joint Appendix (J.A.) at 388–91.

The complainants—plaintiffs in the district court, appellants here—are four organizations that endeavor, through informational, counseling, referral, and other services, to improve the lives of elderly citizens (collectively, AASC). AASC comprises both local and national groups with a combined membership of over one hundred thousand people. *See* Complaint at paras. 3–6, *reprinted in* J.A. at 6–7. The complaint AASC filed in the district court challenged both the content of the HHS-specific regulations and the Secretary's failure to act on regulations proposed by other agencies.

AASC claimed that the HHS-specific regulations were substantively inconsistent with the ADA and with the government-wide regulations. The complaint featured three differences between the government-wide regulations and the HHS regulations. First, the HHS regulations omit the requirement—included in the general regulations—that recipient programs provide HHS with a self-evaluation listing all the age distinctions they utilize and the justification for each (the self-evaluation provision). Second, the HHS regulations require recipients to provide compliance information only if HHS asks for it; these agency-specific regulations are silent on when, if ever, HHS should request such information. By contrast, the government-wide regulations directed the agency to require the provision of compliance information by recipients (the compliance information provision). And third, the HHS regulations include a provision, absent from the general regulations, immunizing from attack under the ADA the age distinctions currently contained in HHS rules (the shield clause).[3] In addition to these substantive objections, AASC alleged that the HHS regulations were procedurally deficient under the Administrative Procedure Act, 5 U.S.C. § 706 (1982) (APA), and that the Secretary's failure to act on the regulations submitted by other agencies violated the ADA and constituted action unreasonably delayed or withheld within the meaning of the APA, 5 U.S.C. § 706(1). *See* Complaint at paras. 17–20, 23–32, *reprinted in* J.A. at 10–15.

The defendants in the district court—the Secretary of HHS and the Director of the

2. The Department of Health and Human Services inherited the responsibilities assigned to the Department of Health, Education, and Welfare under the Act. *See* 20 U.S.C. § 3508 (1982).

3. This provision creates an apparently irrebuttable presumption that all age distinctions contained in HHS rules qualify for a statutory exemption from challenge under the ADA. *Compare* 42 U.S.C. § 6103(b)(1) (1982) (exemption for all actions necessary to the achievement of statutory objectives), *with* 45 C.F.R. § 91.18 (1985) (presuming that all HHS rules are necessary to the achievement of statutory objectives). While not binding on the courts, the regulation would control an agency official investigating or adjudicating a claim that a recipient program had violated the ADA by applying such an HHS rule.

Office of Management and Budget [4]—moved to dismiss on the ground that the plaintiffs lacked standing to maintain the action. The district judge assigned the case to a magistrate. The magistrate concluded that the plaintiffs lacked standing to challenge the HHS regulations because their complaint did not allege sufficient "injury in fact" stemming from those regulations. The magistrate further found, however, that the requisite "injury in fact" had been alleged with respect to the Secretary's failure to act on other agencies' regulations; he therefore recommended retaining that part of the case and dismissing the claims concerning the HHS regulations. *See* Magistrate's Report and Recommendations, No. 83–0285, slip op. at 23–24 (D.D.C. Mar. 2, 1984) [hereinafter cited as Magistrate's Report], *reprinted in* J.A. at 207–08. The district court adopted the magistrate's recommendations without opinion. *See Action Alliance of Senior Citizens v. Heckler*, No. 83–0285 (D.D.C. Mar. 21, 1984) (order on defendants' motion to dismiss).[5]

HHS, some four months later, again moved to dismiss the case, this time on the ground that the remaining issues had become moot. HHS offered letters demonstrating that during the pendency of the suit, the Secretary had approved—either finally or conditionally—all the regulations submitted to HHS and had requested submissions from agencies that had not yet issued proposed regulations. *See* Defendant's Motion to Dismiss, Exhibits 1 and 2 (D.D.C. July 18, 1984), *reprinted in* J.A. at 270–328. Based upon these representations, the district court dismissed the case

as moot. *See Action Alliance*, slip op. at 9, *reprinted in* J.A. at 394.

## II.

We address first the district court's dismissal of the claims concerning the HHS-specific regulations. The magistrate concluded that AASC lacked standing to press these claims because the organizations had not alleged sufficiently concrete "injury in fact" arising from the particular HHS actions they challenged. *See* Magistrate's Report at 16–19, *reprinted* in J.A. at 201–03. The Secretary argues, in addition, that AASC's challenges to HHS's own regulations are premature—not yet ripe for review. *See* Brief for Appellees at 31–37. We hold that appellants do have standing and that their claim concerning one facet of the HHS-specific regulation is fully ripe for review.

Summarizing Article III and prudential limitations, this court has stated: "[T]o establish standing to challenge an agency's handling of its affairs a plaintiff must plausibly (1) allege injury in fact derived from the agency's action or inaction [and remediable by the court's order], and (2) assert that the injury is arguably within the zone of interests protected or regulated by the law on which the complaint is founded." *Capital Legal Foundation v. Commodity Credit Corp.*, 711 F.2d 253, 259 (D.C.Cir.1983); *see also Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The first specification encompasses three constitutional components—injury in fact, causation, and redressability;

---

**4.** The Director of the Office of Management and Budget (OMB) was named as a defendant because AASC believed that the HHS regulations were altered in part in response to OMB's representations concerning changes required by the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.* (1982). *See* Complaint at para. 7, *reprinted in* J.A. at 11. The case against OMB's Director, along with the claims against the Secretary concerning the HHS-specific regulations, was dismissed by the district court on standing grounds. *See Action Alliance*, No. 83–0285 (D.D.C. Mar. 21, 1984) (order on defendants' motion to dismiss). Because we find that appel-

lants do have standing to challenge the content of the HHS regulations, the case against the Director of the OMB must be reinstated and the complaint against that agency remanded for further consideration.

**5.** The intricacy and uncertainty involved in attempts to determine and apply "standing" precedent suggest that the district court should have reviewed more closely the magistrate's conscientious endeavor to grapple with the difficult doctrinal inquiry.

the second is a prudential limitation. *See Von Aulock v. Smith,* 720 F.2d 176, 180–81 (D.C.Cir.1983).

■ In this case, HHS focuses its standing objection on the first of the three constitutional components—injury in fact. Case law instructs that the alleged "injury in fact" will not suffice if it is too speculative, *see O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), but it need not be large or intense; an "identifiable trifle," the Supreme Court has said, is sufficient to meet the constitutional minimum. *See United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973).

The appellants before us devote themselves to the service of senior citizens and rest their claims on programmatic concerns, not on wholly speculative or purely ideological interests in the agency's action. *See Sierra Club v. Morton,* 405 U.S. 727, 739–40, 92 S.Ct. 1361, 1368–69, 31 L.Ed.2d 636 (1972); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 39–40, 96 S.Ct. 1917, 1924–25, 48 L.Ed.2d 450 (1976). Their complaint identifies concrete organizational interests detrimentally affected by the particular HHS regulatory dispositions they challenge.

The government-wide regulations HHS published afford interested individuals and organizations a generous flow of information regarding services available to the elderly. AASC asserts that two of the challenged dispositions in the HHS-specific regulations—the elimination of the self-evaluation requirement and the reduction of compliance reports—significantly restrict that flow. The information secured by the general regulations, but cut short by the HHS-specific regulations, would enhance the capacity of AASC to refer members to appropriate services and to counsel members when unlawful age discrimination may have figured in a benefit denial. *See* Complaint at para. 19, *reprinted in* J.A. at 11–12; Brief for Appellants at 24–25. The third deviation from the general regula-

tions—the shield clause—may raise the cost and difficulty of contesting a denial of services based on age distinctions contained in agency regulations. By immunizing those regulations, the shield clause may make administrative review a meaningless process and leave AASC and its constituency with only one viable option: time-consuming and expensive resort to the courts. As in the case of other organizations whose standing this court has upheld, AASC thus has adequately alleged a direct, adverse impact on its activities by reason of the agency decisions reflected in the HHS-specific regulations. *See, e.g., Scientists' Institute for Public Information, Inc. v. AEC,* 481 F.2d 1079, 1087 n. 29 (D.C.Cir.1973) (holding that plaintiff organization had standing to challenge AEC decision not to issue an environmental impact statement because the agency action limited the plaintiff's ability to carry out one of its major activities: informing the public).

In *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), the Supreme Court held that the plaintiff organization—a group called HOME that promoted racially integrated low- and middle-income housing—had standing to challenge the racially discriminatory "steering" practices of a real estate agency. The Court held that

[i]f, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests....

*Id.* at 379, 102 S.Ct. at 1124.

■ AASC pleads the same type of injury as the plaintiffs in *Havens Realty* : the challenged regulations deny the AASC organizations access to information and ave-

nues of redress they wish to use in their routine information-dispensing, counseling, and referral activities. Unlike the "mere 'interest in a problem' " or ideological injury in *Sierra Club,* 405 U.S. at 735, 739, 92 S.Ct. at 1366, 1368, the AASC organizations have alleged inhibition of their daily operations, an injury both concrete and specific to the work in which they are engaged.[6]

*Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), featured by HHS, *see* Brief for Appellees at 18, does not undermine the allegation of standing made in this case. *Eastern Kentucky* dealt primarily with the Article III requirement that the asserted injury—in addition to qualifying as an "injury in fact"—must be both caused by the defendant's action and remediable by the court's control of the defendant. *See Eastern Kentucky,* 426 U.S. at 40–46, 96 S.Ct. at 1925–28; *see also Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).[7] We have had recent occasion to underscore that a party injured in fact may nevertheless lack standing if the challenged action did not cause the injury or if the requested relief would not redress the injury. *California Association of the Physically Handicapped v. FCC,* 778 F.2d 823, 825–27 (D.C.Cir.1985).

In the *Eastern Kentucky* line of cases, causality and remediability were doubtful because the plaintiffs' injury resulted from the action of third parties not before the court; in *Eastern Kentucky* itself, these parties were certain nonprofit hospitals that limited their aid to indigents to emergency room services. The defendant—a governmental agency—had, in the Supreme Court's view, only speculative and indirect control over the third parties' behavior through the incentive offered by a federal benefit. In *Eastern Kentucky,* the defendant was the Secretary of the Treasury, whose revenue ruling permitted the hospitals to qualify for favorable tax status as "charitable" corporations. The causal and remedial connection was deemed speculative because a court could not know whether the third parties in question (the hospitals in *Eastern Kentucky* ) would choose to forgo federal benefits ("charitable" corporation status) and continue their allegedly injurious behavior (denying nonemergency care to indigents), even if the court ordered the agency—the only defendant before it— to put the third parties to that choice. *See also Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 3328–29, 82 L.Ed.2d 556 (1984).

■ In this case, however, the ultimate relief appellants seek cannot sensibly be viewed as dependent upon the actions of third parties. The complaint targets the departure of the HHS-specific regulations from the government-wide regulations promulgated by the same agency. If the specific regulations are brought in line with the general regulations, appellants will have achieved the redress their complaint requests. It would carry the *Eastern Kentucky* line beyond rational limits to argue that, were beneficiaries of HHS largesse required to file a self-evaluation or a com-

---

**6.** We note, moreover, that dismissal on the pleadings is inappropriate, even if "the extreme generality of [a] complaint" leaves "injury in fact" in doubt, when standing requirements may be satisfied upon affording plaintiffs "an opportunity to make more definite the allegations of the complaint." *See Havens Realty,* 455 U.S. at 377–78, 102 S.Ct. at 1123–24.

**7.** While HHS's presentation is not entirely clear, it appears that the agency draws upon *Eastern Kentucky* principally to support the argument that the injury in this case is ideological rather than concrete and practical. *See* Brief for Appellees at 18. In *Eastern Kentucky,* the Court ruled that the organizational plaintiffs lacked standing on their own behalf because they al-

leged no injury to themselves or their organizational activities, only to their ideological goals. *See Eastern Kentucky,* 426 U.S. at 39–40, 96 S.Ct. at 1924–25. Consequently, the Court considered only the injury alleged by the individual plaintiffs and the organizations' individual members. *See id.* To the extent that HHS is relying upon *Eastern Kentucky* for its ruling concerning "injury in fact" rather than its critical holding concerning the causality and remediability requirements of standing doctrine, HHS's argument has already been considered and rejected above. The appellants have concrete programmatic organizational interests at stake in this case. *See supra* at 937–938.

pliance report, a significant number would so resist the paperwork that they would choose to give up the federal assistance needed to discharge their functions.[8] HHS, we note, attempts no such argument.[9]

In sum, an order holding the challenged features of the HHS-specific regulations impermissible and requiring HHS to issue agency-specific regulations compatible with the general regulations and the Act would terminate the injury AASC alleges. The appellants, therefore, meet all of the Article III criteria for standing.[10]

In addition, the interests at stake in this case satisfy the prudential standing requirement. *See Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25

L.Ed.2d 184 (1970); *see also* Scott, *Standing in the Supreme Court—A Functional Analysis,* 86 Harv.L.Rev. 645, 663–66 (1973) (discussing the "zone of interests" test). The appellants claim that the challenged features of the HHS-specific regulations make it more difficult for the organizations to assist elderly persons to know, enjoy, and protect their rights under the ADA. *See* Complaint at paras. 19–21, *reprinted in* J.A. at 11–13. Such interests as promotion of the knowledge, enjoyment, and protection of the rights created by a statute are securely within the "zone of interests" protected by that statute. *See Animal Welfare Institute v. Kreps,* 561 F.2d 1002, 1010 (D.C.Cir.1977).[11]

Although related to standing, the question of ripeness for review requires a

---

**8.** One of the challenged provisions, the shield clause, does not involve a third party at all. The provision directs the agency itself on the disposition of discrimination claims based on age distinctions contained in HHS rules. The clause does not direct or prohibit any behavior by a recipient.

**9.** We mention another basis on which one might distinguish the causality and remediability situation in this case from the situation presented in *Eastern Kentucky* and *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In *Eastern Kentucky,* the organizational plaintiffs alleged no injury to their activities, only to their ideological goals, and lacked standing on that account. *See Eastern Kentucky,* 426 U.S. at 39–40, 96 S.Ct. at 1924–25. Injury in fact was therefore considered only in the context of the claims of the individual plaintiffs. Each individual plaintiff could only claim injury due to the loss of health care services in the particular locale in which he or she resided. No plaintiff could show that the specific institutions in the community of that plaintiff's residence would in fact serve indigents more generously if the IRS forced the institutions to choose between curtailed service to indigents and certain tax benefits. *See id.* at 43, 96 S.Ct. at 1926. The *Eastern Kentucky* plaintiffs' claim of causality and remediability was, therefore, undermined. Similarly, in *Allen v. Wright,* the Court deemed it highly speculative whether the several third parties (private schools) affected by the IRS action plaintiffs sought (vigorous monitoring of nondiscrimination requirements) would respond in the ways necessary to eliminate the alleged injury "in [plaintiffs'] communities." 104 S.Ct. at 3328.

In this case, by contrast, the appellants include national organizations that have demon-

strated injury in fact to their programmatic, organizational interests. *See supra* at 937–938. These appellants deal with the whole range of programs affecting the elderly in locations throughout the nation; they would, therefore, be injured by a loss of information in any location and regarding any such program. In other words, they have the breadth of interest necessary to support a claim of injury in fact based on the impact of the HHS-specific regulations on the whole class of recipient programs. Thus, they need not show that any particular recipient is likely to abide by HHS-imposed reporting provisions rather than forfeit its federal aid.

**10.** AASC might also assert standing on behalf of its members, rather than in its own right. A voluntary membership organization has standing to represent its members' interests, even if it suffers no injury itself, if (1) the members would have standing to raise the claims at issue; (2) the interests to be protected are germane to the organization's purposes; and (3) neither the claim nor the relief makes individual members necessary parties. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). The type of claim at issue in this case at least arguably meets these criteria. *See Consumers Union v. FTC,* 691 F.2d 575 (D.C.Cir.1982) (en banc), *aff'd sub nom. U.S. House of Representatives v. FTC,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402 (1983) (holding that consumer groups have standing, on behalf of their members, to challenge FTC rules that withhold used car information from consumers).

**11.** The court in *Animal Welfare Institute, supra,* noted that the environmental groups' partic-

discrete inquiry. HHS tended to blend or confuse standing and ripeness inquiries in its brief and at oral argument. While the same facts are sometimes relevant to both issues—*e.g.*, the speculative nature of the harm—the two doctrines address different underlying concerns. Standing doctrine is designed to determine *who* may institute the asserted claim for relief. Ripeness doctrine addresses a *timing* question: *when* in time is it appropriate for a court to take up the asserted claim. Although we see no persuasive argument against appellants' standing, we think HHS has raised convincing objections regarding the ripeness of some of AASC's claims.

 The Supreme Court has stated a ripeness test that directs courts to evaluate two criteria: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).[12] The appropriateness of an issue for judicial review depends upon such factors as: whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position, for example, when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it. *See Better Government Association v. Department of State*, 780 F.2d 86, 92–93 (D.C.Cir.1986). In order to outweigh institutional interests

in the deferral of review, the hardship to those affected by the agency's action must be immediate and significant. Applying this balancing test to the case at hand, we find one of the appellants' substantive claims ripe for review.

 AASC's first claim concerns the elimination of a self-evaluation requirement. The government-wide regulations, and the proposed HHS regulations, required all aid recipients subject to the ADA to perform a self-evaluation involving, *inter alia*, the compilation of a list identifying and justifying all age distinctions used by the recipient. *See* 45 C.F.R. § 90.43(b) (1985) (government-wide regulation); 44 Fed.Reg. 55116, § 91.33 (1979) (proposed HHS regulations). The final HHS regulations omitted this self-evaluation provision. The appellants claim that the omission puts the HHS regulations in conflict with both the general regulations and the Act.

This issue is appropriate for review. The agency action is final: the HHS regulations have been promulgated officially and are in effect. The question is one of law: whether the HHS regulations are facially deficient because, as written, they are inconsistent with the general regulations or the ADA. No "application" of the omitted provision is really possible, and none is required because resolution of this purely legal dispute could not benefit from a more concrete setting. Nor is this challenge directed to a discretionary prescription. The agency has chosen to omit the requirement altogether, rather than to make imposition

ipation in the passage of the statute at issue in that litigation added support for their standing as plaintiffs. *See Animal Welfare Institute*, 561 F.2d at 1010 & n. 44. Congress, the court observed, thus had the interests of such organizations clearly in view when it designed and adopted the legislation. The same consideration attends this case. The Committee Reports on the bill that became the Age Discrimination Act indicate that Congress heard and took into account the views of groups, like the appellants here, who serve the elderly and represent their interests. *See* H.Rep. No. 67, 94th Cong., 1st Sess. 7 (1975); S.Rep. No. 254, 94th Cong., 1st Sess. 13 (1975).

12. Ripeness doctrine is responsive to constitutional as well as prudential considerations.

When the *Abbott Laboratories* balance, *see supra*, shifts far to the side of inappropriateness for review, a serious question arises as to the existence of the constitutionally required "case or controversy." *See* Eagle-Picher Indus., Inc. v. EPA, 759 F.2d 905, 915 (D.C.Cir.1985). Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint. The point at which constitutional constraint fades into persuasive practicalities is difficult to discern and unnecessary to identify; the claim is unripe whether the balance is so lopsided as to raise constitutional questions or is only weighty enough to generate prudential concerns.

of the initial self-evaluation requirement contingent on an exercise of agency discretion.[13]

AASC also has alleged that it is suffering an immediate and significant hardship as a result of the elimination of the self-evaluation provision. The information to which AASC would otherwise have access qualifies as a resource useful in appellants' daily counseling and referral work. If "the impact of the administrative action [can] be said to be felt immediately by those subject to it in conducting their day-to-day affairs," the claim is ripe. *See Air New Zealand Ltd. v. CAB*, 726 F.2d 832, 836 (D.C.Cir. 1984). We thus conclude that the substantive challenge to the omission of the self-evaluation requirement is ripe for review.

■ The appellants' second claim concerns the change in the compliance reporting requirement. The government-wide regulations require the agency to order recipients to provide information concerning their compliance with the ADA. *See* 45 C.F.R. § 90.45(a) (1985) (government-wide regulations). The final HHS regulations order the recipient to provide such information *if* the agency requests it, and do not instruct the agency on whether or when compliance information should be demanded. *See* 45 C.F.R. § 91.34 (1985). The appellants allege that changing this provision from mandatory to discretionary violated the statute.

The discretionary cast of the challenged, recently-issued provision undermines the appropriateness of current review. A facial, purely legal challenge is both more difficult and less worthwhile when the prescription challenged is discretionary. To hold the provision invalid on its face, a court would have to conclude that the provision stands in conflict with the statute regardless of how the agency exercises its discretion. Before so ruling, a court would be obliged to perceive and consider the various ways in which the agency might use its discretion. In this case, for example, if the Secretary were to exercise his discretion under the challenged provision by requesting compliance reports from all recipients, then the provision, as applied, would be functionally equivalent to the mandatory provision in the general rules. The only difference would be the formal existence of discretion to alter this policy; absent actual exercise of such discretion, appellants would experience no harm.

In an attempt to demonstrate concrete hardship if review is withheld until HHS's practice under the provision can be ascertained, AASC alleges that information compliance reports would furnish, like the self-evaluation data, would be a valuable resource in appellants' everyday counseling and referral services. When questioned at oral argument, however, counsel for appellants was uncertain of the type of information a compliance report would contain. If the appellants have no precise notion of the kind of information at stake, they cannot know with security what utility the information would have for their activities. In sum, the discretionary character of the compliance report provision, and the lack of a convincing, countervailing hardship to the appellants persuade us that this claim is not yet ripe for review.

■ The appellants' third claim concerns the "shield clause" inserted in the final HHS regulations. This provision automatically places all HHS regulations in a statutory exception immunizing them from review under the ADA, at least by agency administrators. The statute provides that "[i]t shall not be a violation of any provision of this chapter, or any regulation issued under this chapter, for any person to take any action otherwise prohibited by ... [this Act] if, in the program or activity involved—(A) such action reasonably takes

---

13. The final HHS-specific regulations do allow the agency, in its discretion, to require a recipient to provide a self-evaluation as part of a compliance review or a complaint investigation. *See* 45 C.F.R. § 91.33(b). Because this provision is explicitly limited to recipients who have been singled out for review or investigation, the prescription is too narrowly focused to qualify as a discretionary version of the generally-applicable self-evaluation provision in the government-wide regulations.

into account age as a factor necessary to the normal operation or achievement of any statutory objective of such program or activity...." 42 U.S.C. § 6103(b)(1). The challenged regulation brings all HHS rules within this exception by stating that "[a]ny age distinction contained in a rule or regulation issued by HHS shall be presumed to be necessary to the achievement of a statutory objective of the program to which the rule or regulation applies...." 45 C.F.R. § 91.18 (1985). AASC alleges that this provision violates both the general regulations—which do not contain a shield clause—and the statute.

The "shield clause" claim is not yet ripe for review. If, in fact, all of the agency's regulatory age distinctions would qualify for the statutory exception, then the "shield clause" would merely replicate the exception itself, which is contained in both the statute and the general regulations. Conflict with the statute is not apparent on the face of the provision. Application of the clause in particular instances, however, might reveal that certain age distinctions shielded by the HHS regulation do not fit within the statutory exception. We find it evident that court consideration of the shield clause would indeed benefit from presentation of the matter in a more concrete context.

Furthermore, the appellants identify no immediate hardship if the court withholds review. They have not pinpointed any age distinctions currently in HHS rules that appear vulnerable to attack under the ADA. We therefore conclude that AASC's objection to the shield clause remains too hypothetical or abstract to engage judicial review.

■ The appellants also argue that the HHS-specific regulations are procedurally invalid. They rest this charge on two grounds: first, the change from the proposed regulations to the final regulations was so great that new notice and a new comment period were required; and second, the final regulation lacked an adequate statement of purpose explaining the changes. *See* Magistrate's Report at 19–23, *reprinted in* J.A. at 203–07; Brief for Appellants at 33–37. Both contentions may be aired now.

Fitness for court adjudication is plain. The HHS-specific regulations have been finally promulgated; thus, all facts necessary to resolve these procedural questions are in existence and easily adduced. The procedure HHS employed—whether adequate or deficient—has been completed. The issues will not become clearer or more concrete with the passage of time.

Moreover, the "hardship" criterion of *Abbott Laboratories* is met here to the extent that the elimination of recipient self-evaluation is implicated. We have already explained that AASC's counseling and referral activities are inhibited by the absence of the information recipient self-evaluations would afford. *See supra* at 937–938. That inhibition is as real, and causes the same hardship, whether it results from an agency decision that is substantively invalid or one that is procedurally infirm.

To summarize, AASC has standing as to all claims asserted regarding the HHS-specific regulations, but it has a ripe case only as to the self-evaluation claim. As part of that ripe case, it may raise both the procedural infirmities alleged to infect the HHS-specific regulations and its substantive objections to the elimination of the self-evaluation requirement.

### III.

■ We turn finally to the appellants' challenge to the Secretary's failure to act on other agencies' regulations.[14] The ap-

---

**14.** The magistrate and the district court ruled that the plaintiffs had standing to challenge the Secretary's failure to act on the other agency-specific regulations. *See* Magistrate's Report at 13–16, *reprinted in* J.A. at 197–200; *Action Alliance of Senior Citizens v. Heckler,* No. 83–0285 (D.D.C. Mar. 18, 1984) (order on defendants'

motion to dismiss). Nonetheless, HHS argues on appeal that the appellants lack standing to raise that claim as well. *See* Brief for Appellees at 16 n. 7. We disagree.

As we have held above, these appellants have a concrete interest in the regulations at issue here. *See supra* at 937–938. The Secretary's

pellants charged the Secretary with unreasonable delay and withholding action in violation of the ADA and the APA. *See* Complaint at paras. 27–32, *reprinted in* J.A. at 14–15. HHS has offered uncontradicted evidence to show that since the filing of this suit, the Secretary has approved all pending regulations and requested the submission of the remainder. *See* Defendant's Motion to Dismiss, Exhibits 1 and 2 (D.D.C. July 18, 1984), *reprinted in* J.A. at 270–328. In light of these changed circumstances, we affirm the district court's dismissal of this part of AASC's case.

Currently, the Secretary is not withholding any action. The Secretary has approved, either finally or conditionally, all of the other agencies' regulations submitted to him. HHS has represented that no further approval is required for regulations conditionally approved; once the conditions are met, these regulations become effective immediately. *See* Brief for Appellees at 41–42.

In addition, we discern no basis for projecting future delay. The Secretary appears to have neither the occasion nor the inclination for continuing delay. The district court found that the Secretary has no authority to revoke approvals once granted and no power to force the remaining agencies to submit their proposed regulations.

*See Action Alliance,* slip op. at 8, *reprinted in* J.A. at 393. The Secretary has, moreover, demonstrated an intention to proceed with due diligence in several ways. The Secretary has written to the laggard agencies requesting that they submit regulations for approval, *see* Defendant's Motion to Dismiss, Exhibit 2 (D.D.C. July 18, 1984), *reprinted in* J.A. at 312–26, and has undertaken to "act diligently and expeditiously in approving the outstanding regulations once they are submitted." *See Action Alliance,* slip op. at 7, *reprinted in* J.A. at 392. This undertaking is corroborated by the Secretary's speedy approval of the one submission made since the inception of this suit. *See id.* at 8 n.\*, *reprinted in* J.A. at 393.

We are satisfied that HHS is now proceeding to fulfill with due diligence its charge under the ADA to review the regulations of other agencies. In light of the Secretary's actions and representations, there is no need at this time for a court order compelling agency action unreasonably delayed. *See Oil, Chemical, and Atomic Workers International Union v. Zegeer,* 768 F.2d 1480, 1488 (D.C.Cir.1985). We therefore affirm the district court's dismissal of the claims concerning the Secretary's failure to act on regulations submitted by other agencies.[15]

---

alleged failure to approve any regulations deprives AASC of information and avenues of redress just as effectively as the issuance of regulations that explicitly restrict those benefits. Because they have a cognizable interest in the benefits that would flow to them under approved regulations consistent with the government-wide regulations, the appellants have standing to challenge whatever agency action deprives them of those benefits, whether it be an inconsistency between the general and specific regulations or a failure to approve any specific regulations at all.

15. The appellants cannot salvage these claims by arguing that they concern the Secretary's past actions rather than present or future ones. Any claims relating to past delay would now be moot because the delay is unlikely to recur and the effects of past delay have been eradicated by the Secretary's subsequent action. *See County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). As discussed above, there is no reasonable expecta-

tion that the delay will recur because there is little opportunity for delay remaining and the Secretary has foresworn such behavior. *See supra* at 943. In addition, harm caused by the past delay has been eradicated by the Secretary's approval of the outstanding regulations. The appellants are requesting injunctive and declaratory relief, not damages. The harm that would be redressed by the requested equitable relief has already been eliminated by the Secretary's actions. Thus, any equitable claims concerning past delay are moot. *See Action Alliance,* slip op. at 5–9, *reprinted in* J.A. at 390–94.

The appellants may, however, seek to challenge the Secretary's approval of the other agencies' regulations on the same ground that they challenge the HHS regulations: inconsistency with the government-wide regulations or the statute. The Secretary has a duty not to approve the regulations unless they are in compliance with the general regulations. *See* 42 U.S.C. § 6103(a)(4). Claims concerning the specific regulations of other agencies would, of course,

CONCLUSION

Appellants have standing to raise all the claims stated in this case. The district court properly dismissed the claims concerning the Secretary's delay, and only the substantive and procedural challenges associated with the Secretary's elimination of the recipients' self-evaluation are currently ripe for review. We therefore affirm in part, reverse in part, and remand the case to the district court for proceedings consistent with this opinion.[16]

*It is so ordered.*

---

be subject to the same standing and ripeness analyses as the claims concerning the HHS-specific regulations, *see supra* at 936–943, but, obviously, they would not be moot. The appellants assert that they have already challenged "the Secretary's dilution of other agency regulations." Reply Brief at 21 n. 23. If they have not done so clearly enough, they could, with the district court's permission, now amend their complaint to add such claims to the extent that

our opinion recognizes them as ripe for review. *See* Fed.R.Civ.P. 15(d).

16. Specifically, the district court should proceed with the claim that elimination of the self-evaluation requirement is inconsistent with the general regulations and the ADA and the contentions that, in any event, procedural deficiencies necessitate reconsideration of the HHS-specific regulations.