James A. YOUNGER, et al., Plaintiffs,

v.

Thomas K. TURNAGE, et al.,
Defendants.

C.A. No. 87–423.

United States District Court,
District of Columbia.

Jan. 13, 1988.

Stanley M. Gorinson, Kevin R. Sullivan, and Deborah M. Lerner, Robert M. Hayes and Maria Foscarinis, and Barton F. Stichman, Washington, D.C., for plaintiffs.

Edith S. Marshall, and Mark E. Nagle, Asst. U.S. Attys., Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

Plaintiffs, two individuals and three organizations,[1] bring suit challenging the compliance of defendants, Veterans Administration ("VA") and its administrator, Thomas K. Turnage, with the Veterans Education and Training Act Amendments of 1970, codified at 38 U.S.C. §§ 240 *et seq.* Plaintiffs seek declaratory and injunctive relief in an effort to force the defendants to comply with this statute as plaintiffs interpret it. *See* Complaint at 1–3.

The plaintiffs in this action demand that the VA adopt an outreach program similar to one developed in New York City in a cooperative effort involving state and city agencies and the VA regional office. As proposed by the plaintiffs, the VA would be required to go into the shelters on a regular basis, train shelter staff, and expedite homeless veterans' claims. *See* Complaint at 13–14. While this program has been apparently successful, its success is due in no small part to the cooperation and assistance provided by local government and shelter operators. Thus, the standards sought by the plaintiffs go well beyond that which is required of the VA by the Veterans Outreach Services Program.

The plaintiffs ask this Court to declare that the failure of the VA to issue systematic, nationwide standards for the provision of outreach services to assist homeless veterans in obtaining benefits to which they may be entitled is unlawful and a violation of the defendants' statutory obligations. *See* Complaint at 19. Furthermore, plaintiffs seek to have this Court enjoin the defendants to establish certain minimum standards for outreach to homeless veterans. *See* Complaint at 20.[2] According to the plaintiffs, the defendants are failing to fulfill their statutory obligation to conduct outreach to the "maximum extent possible" to all veterans by refusing to establish any meaningful standards for conducting outreach to homeless veterans. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction at 1.

---

1. Plaintiffs in this action are James A. Younger, a homeless World War II veteran residing at the Pierce Shelter in Washington, D.C.; Michael G. McCalpin, a homeless Vietnam War veteran residing at the Irving Street Shelter in Washington, D.C.; Friends of the Homeless, Inc., a private not-for-profit corporation organized and existing under the laws of the State of Ohio; the National Coalition for the Homeless, a not-for-profit corporation organized and existing under the laws of the State of New York; and the Vietnam Veterans of America, a national not-for-profit service organization chartered by Con-

gress. Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction at 7.

2. The Court notes that this action is not barred by 38 U.S.C. § 211(a) which prohibits judicial review of a decision by the Administrator regarding the provision of benefits. *See also Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Gott v. Walters,* 756 F.2d 902 (D.C.Cir.1985).

The VA contends that budgetary constraints limit its ability to unilaterally implement such a program, and that furthermore, it is doing all that is required by the statute. Defendants argue that the plaintiffs lack standing and that furthermore the plaintiffs' contention lacks any statutory basis. According to the defendants, the statute, on its face, defines no clear and non-discretionary duty of the VA to devote special attention to the homeless in outreach efforts or to establish any "minimum standards" for doing so. *See* Defendants' Memorandum of Points and Authorities in Support of Their Motion to Dismiss the Case, and in Opposition to the Plaintiffs' Motion for a Preliminary Injunction at 18.

By orders dated May 11 and May 19, 1987, this Court directed the parties to supplement the record so that this case could be decided on the merits on cross-motions for summary judgment. After careful consideration of the papers proffered by the parties, the Court concludes that the plaintiffs do have the requisite standing to bring this action, but that the defendants, in the exercise of their discretion, have not acted arbitrarily or capriciously in interpreting and applying the statute. Therefore, the plaintiffs' motion for summary judgment must be denied, and the defendants' motion for summary judgment must be granted.

## II. ALL PLAINTIFFS TO THIS ACTION HAVE STANDING TO SUE

### A. *The Requisite Elements of Standing*

The defendants challenge plaintiffs standing to bring this action. In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). A federal court's jurisdiction can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action...." *Id.* at 499, 95 S.Ct. at 2205, *quoting Linda R.S. v. Richard D.,* 410

U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

The complaint must indicate that the injury is indeed fairly traceable to the defendant's acts or omissions. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); *see also Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206 (defendant's act or omission must give rise to a "distinct and palpable injury"); *Laird v. Tatum,* 408 U.S. 1, 14, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972) ("a claim of specific present objective harm or a threat of specific future harm"). Moreover, the injury claimed must be likely redressed by a favorable decision by the Court. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), *quoting Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976).

"Although standing in no way depends on the merits of the plaintiff's conention that particular conduct is illegal, *e.g., Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968), it often turns on the nature and source of the claim asserted." *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2206. The actual or threatened injury may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing. *See id.; Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed. 2d 214 (1982) (citations omitted). Thus, at a minimum, in order to prove standing, plaintiffs must show (1) actual or threatened injury that is arguably within the zone of interests protected or regulated by the law on which the complaint is founded, (2) traceable to the defendant, and (3) amenable to judicial remedy. *See Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 936 (D.C.Cir.1986); *Synar v. United States,* 626 F.Supp. 1374, 1380 (D.D.C.1986). In analyzing whether standing requirements have been met, the Court must accept as true all material allegations

of the complaint and construe them in favor of the plaintiffs. *See Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206.

■ Prudential considerations also guide a court in determining whether a party properly has standing to assert a claim. *See generally Valley Forge Christian College, supra,* 454 U.S. at 471, 102 S.Ct. at 758. The primary prudential consideration is whether, given the fact that a particular plaintiff has sustained an injury in fact as the result of the defendant's act or omission, the plaintiff should be heard to complain of that injury. *See, e.g., Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The question is whether the plaintiff's injury is within the zone of interest afforded by the relevant statute or the Administrative Procedure Act that permits relief. The zone of interest test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision. *Clarke v. Securities Industry Association,* — U.S. ——, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987).

■ In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. 107 S.Ct. at 757. In analyzing the relevant statute, the Supreme Court in *Clarke* emphasized the importance of understanding Congress' overall purposes. *See id.* at 758. Unlike a situation in which a plaintiff sues on the basis of a private cause of action within the relevant statute, the zone of interest inquiry involving a claim under § 10(a) of the Administrative Procedure Act (5 U.S.C. § 702) is interpreted rather expansively to give effect to the APA's "generous review provisions" so as to serve "a broadly remedial purpose." *See id.* at 755.

**B.** *The Individual Plaintiffs Have Standing to Pursue this Action*

■ According to the allegations contained within the complaint, plaintiffs Younger and McCalpin were honorably discharged from military service and are therefore "veterans" as that term is defined in 38 U.S.C. § 101(2). Furthermore, these men are currently homeless and reside at shelters for homeless people. Complaint at 3–4. Since becoming homeless, these men have not been contacted by the VA pursuant to the Veterans Outreach Services Program. *Id.*

As veterans, plaintiffs Younger and McCalpin are among the intended beneficiaries of the Veterans Outreach Services Program. Therefore, they are qualified to receive outreach services irrespective of the question whether they actually would receive VA benefits. Thus, these individual plaintiffs have standing to challenge the "policy" of the VA not to implement minimum standards aimed at providing assistance to homeless veterans, because, as veterans, they are qualified to receive outreach services. *See DKT Memorial Fund, Ltd. v. Agency for International Development,* 810 F.2d 1236, 1238 (D.C.Cir.1987). Although the statute is silent with respect to the right to judicial relief should the VA fail to meet its statutory obligation to seek out and assist veterans, § 10(a) of the Administrative Procedure Act "grants standing to a person 'aggrieved by agency action within the meaning of a relevant statute.'" *Clarke, supra,* 107 S.Ct. at 754–55, *quoting Association of Data Processing Service Organizations, supra,* 397 U.S. at 153, 90 S.Ct. at 829.

Defendants further argue that irregardless of whether these individual plaintiffs are entitled to receive assistance pursuant to the outreach program, the "injury," such as it is, is "essentially abstract." *See* Defendants' Memorandum of Points and Authorities in Reply to the Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss at 4. To have standing, the plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the

challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 1665, 75 L.Ed. 2d 675 (1983); *see also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

This Court believes that if the VA is failing to conduct outreach as required by law, then these plaintiffs have indeed alleged a distinct, palpable and concrete injury. They allege that they are not receiving a benefit, *i.e.,* outreach services, to which they are entitled. Congress specifically defined the purpose of the outreach program so to provide "timely and appropriate assistance to aid and encourage [veterans] in applying for and obtaining such benefits and services in order that they may ... obtain a higher standard of living for themselves...." 38 U.S.C. § 240. Thus, these two individual plaintiffs have met the test for standing to bring this action by alleging injury in fact traceable to the defendants' conduct which can be remedied by court order.

### C. *The Organizational Plaintiffs Also Have Standing to Pursue this Action*

■ The plaintiff organizations, Friends of the Homeless, Inc. ("Friends"), National Coalition for the Homeless ("National Coalition"), and the Vietnam Veterans of America ("Vietnam Veterans"), each assert standing in its own right. *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and in Reply to Defendants' Response to Plaintiffs' Motion for Preliminary Injunction at 8. In addition, plaintiff National Coalition asserts standing on a representational theory. *Id.* at 8 n. 3. As such, these organizations must establish "concrete and demonstrable injury to [their] activities—with the consequent drain on [their] resources...." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982); *see also Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 937 (D.C. Cir.1986) (Appellants "rest their claims on programmatic concerns, not on wholly

speculative or purely ideological interests in the agency's action.").

These organizations allege that the failure of the VA to meet its statutory obligations to conduct outreach to homeless veterans has caused them to "devote significant resources to providing limited information about benefits to homeless veterans in order to compensate for the void." Plaintiffs' Complaint at ¶ 34; Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and In Reply to Defendants' Response to Plaintiffs' Motion for Preliminary Injunction at 10–11. The issue of standing with respect to the organizational plaintiffs is whether the challenged omission on the part of the VA lessened each organization's ability to engage in the purpose for which it was formed. *See, e.g., Hotel & Restaurant Employees Union v. Attorney General,* 804 F.2d 1256, 1262 (D.C.Cir.1986); *Action Alliance of Senior Citizens, supra,* 789 F.2d at 937 (organization's information-disseminating program hindered by government regulations). The size of the injury is irrelevant for the purposes of standing as long as it is identifiable. *See* 804 F.2d at 1262.

In the instant case, plaintiff organizations Friends of the Homeless, Inc. and Vietnam Veterans of America provide assistance to homeless people, including veterans, that includes information regarding government benefits and assistance. *See* Complaint at 4–5. Plaintiff organization The National Coalition for the Homeless is "devoted to providing aid and advocating on behalf of homeless persons." Complaint at 5. The National Coalition seeks standing on a representational basis because its members are alleged to be suffering immediate or threatened injury as a result of the challenged conduct. *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and in Reply to Defendants' Response to Plaintiffs' Motion for Preliminary Injunction at 8 n. 3. According to the plaintiffs, organizations Friends and the National Coalition "are dedicated to ensuring that homeless persons—including homeless veterans—receive basic survival resources." Plaintiffs'

Memorandum in Opposition at 8–9. Plaintiff VVA "similarly seeks to ensure that all Vietnam veterans—including those who are homeless—receive services necessary to their survival and well-being." *Id.* at 9. These organizations are in the business of providing, among other things, access to information and assistance for homeless people, including veterans.

The programs and objectives outlined by the plaintiff organizations closely mirror those of the four plaintiff-appellant organizations in *Action Alliance of Senior Citizens v. Heckler, supra,* 789 F.2d at 935. In that case, the four organizations endeavored, through informational, counseling, referral, and other services, to improve the lives of elderly citizens. *See id.* These four organizations complained that the regulations approved by the Secretary for Health and Human Services cut the flow of information that would have enhanced their capacity to refer members to appropriate services and to counsel members. *Id.* at 937. The Court of Appeals for the District of Columbia went on to add that "[u]nlike the 'mere "interest in a problem"' or ideological injury in *Sierra Club,* 405 U.S. at 735, 739, 92 S.Ct. 1361, 1368, the ... organizations have alleged inhibition of their daily operations, an injury both concrete and specific to the work in which they are engaged." *Id.* at 938 (footnote omitted); *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982) ("Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services."). Furthermore, the plaintiff organizations in the instant action, like the plaintiff organization in *Havens Realty,* have had to devote their limited resources to providing assistance to homeless veterans that, as alleged by the plaintiffs here is the statutory obligation of the VA. The effort expended by the plaintiff organizations in attempting to see that homeless veterans receive information re-

garding benefits to which they may be entitled puts a concrete and demonstrable strain on these organizations that they would otherwise devote their limited resources to other assistance efforts on behalf of homeless people.[3] Such concrete and demonstrable injury to these organizations' activities with the consequent drain on their resources constitutes injury in fact for purposes of standing. *See Havens Realty Corp., supra,* 455 U.S. at 379, 102 S.Ct. at 1124. Moreover, the alleged injury is "indeed fairly traceable to the defendants' ... omissions." *Village of Arlington Heights, supra,* 429 U.S. at 261, 97 S.Ct. at 561 (citations omitted).

The Court further believes that the plaintiff organizations satisfy the prudential consideration that the interest they seek to protect is arguably within the zone of interests covered by the Veterans Outreach Services Program. *See Clarke v. Securities Industry Association, supra,* 107 S.Ct. at 755, *quoting Association of Data Processing Service Organizations, Inc., supra,* 397 U.S. at 153, 90 S.Ct. at 829. "The [zone of interests] test is not meant to be particularly demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." 107 S.Ct. at 757, (footnote and citation omitted). Furthermore, there is no indication that Congress precluded judicial review in any form, much less for these plaintiff organizations. *See Block v. Community Nutrition Institute,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984).

Thus, when the purpose for which Congress enacted the Veterans Outreach Services Program is compared with the aims and objectives of the plaintiff organizations, it becomes clear that the plaintiff organizations have a good deal more than a marginal interest in the statute. In fact, these organizations further the express purpose of the statute which is to provide "timely and appropriate assistance to aid

---

**3.** The National Coalition has educated more than 100 employees of the VA on the issue of homelessness amongst veterans. *See* Plaintiffs' Memorandum in Opposition to Defendants' Mo-

tion to Dismiss and in Reply to Defendants' Reponse to Plaintiffs' Motion for Preliminary Injunction at 11 n. 5.

and encourage [veterans] in applying for and obtaining ... benefits and services in order that they may ... obtain a higher standard of living for themselves...." *See* 38 U.S.C. § 240. There is no danger that allowing these organizations to sue the VA will severely disrupt any "complex and delicate administrative scheme." *Clarke, supra,* 107 S.Ct. at 757. The plaintiff organizations have standing to bring this action.

## III. THE VETERANS OUTREACH SERVICES PROGRAM IMPOSES NO AFFIRMATIVE DUTY ON THE VETERANS ADMINISTRATION TO IMPLEMENT SYSTEMATIC, NATIONWIDE GUIDELINES AS PROPOSED BY PLAINTIFFS TO ADDRESS THE NEEDS OF HOMELESS VETERANS

Plaintiffs allege that the VA and its administrator have violated a purported statutory obligation to establish minimum standards for conducting outreach to homeless veterans. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment at 1. An analysis of the statute indicates that Congress did not require that the VA establish minimum standards for outreach to any particular group of veterans, but rather that the VA shall provide outreach services to all veterans "to the maximum feasible extent" or "to the maximum extent possible." *See* 38 U.S.C. § 241.

■ While Congress has directed that the VA shall establish outreach services, the manner in which those services are to be provided has been left to the discretion of the agency. The absence of statutory guidelines "does not render the agency's decisions completely nonreviewable." *Robbins v. Reagan,* 780 F.2d 37, 45 (D.C. Cir. 1985). Thus, for example, an agency must make some effort at adopting regulations or guidelines that give effect to Congress' commitment to a particular concern. *See,*

*e.g., Charette v. Bergland,* 457 F.Supp. 1197, 1202 (D.R.I.1978). An agency cannot issue regulations and directives which are inconsistent with an act of Congress. *See, e.g., Bennett v. Butz,* 386 F.Supp. 1059, 1065 (D.Minn.1974). However, where the agency has implemented a program consistent with a congressional statute, a plaintiff has no cause of action to enjoin an agency where he disagrees with the manner in which the agency has chosen to proceed or where he alleges that his alternative would in no way impede the agency's ability to render decisions on how to proceed.

■ The scope of judicial review in this case is limited under the Administrative Procedure Act to a determination by the Court as to whether the VA and its administrator have unlawfully withheld agency action, 5 U.S.C. § 706(1), or have acted in a manner that could be characterized as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). The VA surely does not have discretion to decide not to conduct outreach services. However, the uncontroverted evidence indicates that the VA is complying with its mandatory obligations under the statute [4] and has developed various programs and services to satisfy its obligation to see that outreach services are provided to the maximum extent possible. But, as defendants correctly point out, the statute "does not require or even suggest any specific amount of allocation of limited resources to, or any specific mandatory means of addressing, the outreach needs of homeless veterans." Defendants' Memorandum of Points and Authorities in Support of Their Motion to Dismiss the Case, and in Opposition to the Plaintiffs' Motion for Preliminary Injunction at 18.

Plaintiffs' contention that the only effective outreach is systematic outreach employing the guidelines proffered by the

---

4. For example, the statute specifically requires the Administrator, among other things, to establish and maintain veterans assistance offices, 38 U.S.C. § 242(a), and to establish special telephone facilities, 38 U.S.C. § 242(b), and the records shows that this is what the defendants are now and have been doing. Whether this is sufficient to comply with the wishes of the plaintiffs is a question to be addressed at some other time and should be properly brought before the Congress in the first instance.

plaintiffs, *see* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment at 10, finds no basis in the statute or any other authority. In fact, plaintiffs cite no authority in support of their proposition that the only "true outreach" is outreach predicated upon plaintiffs' guidelines. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction at 29 ("Outreach which is without structure or minimum standards [is] ... wholly ineffective [and] ... is tantamount to no outreach at all."). Plaintiffs are also incorrect in stating that the VA has ignored "an entire category of desperately needy veterans—homeless veterans." Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment at 2. First, the statute does not require the VA to categorize veterans for purposes of providing outreach services. Second, the VA has developed specific guidelines, contained within its manual, aimed at addressing the problems of homeless veterans. *See, e.g.*, Horton Declaration ¶ 5; Defendants' Exhibits G, H, and I; attachment (M27–1, ¶ 12.11) to Defendants' Statement of Material Facts as to Which There is No Genuine Issue. The VA has established a "Working Group on Homelessness." Horton Declaration ¶ 16. VA staff have visited many homeless shelters on a regular basis, and in other cases, on a periodic basis. Moses Declaration ¶ 3. These efforts, among others, are consistent and in compliance with the VA's statutory obligation to provide outreach services to veterans.

The Court sympathizes with the plaintiffs' objectives, and does not doubt that the VA itself would like to do more if it could. However, the relief sought by the plaintiffs in this case is a matter that must be addressed by Congress in the first instance. The statute as currently written simply does not require the VA to undertake the actions in the manner that plaintiffs would like to see implemented. The Court concludes that the VA's actions in reaching out to homeless veterans are reasonably consistent with Congress' goal of requiring the VA to provide outreach services, to the maximum extent possible, to all veterans. There is no affirmative obligation on the VA to provide outreach services to homeless veterans in the manner of a systematic, nationwide set of guidelines as proposed by the plaintiffs.

An Order will issue on even date herewith in accordance with this Opinion.

## ORDER

In accordance with the Opinion of the Court issued on even date herewith, it is by the Court this 13th day of January, 1988,

ORDERED that plaintiffs' motion for summary judgment be, and hereby is, denied; and it is

FURTHER ORDERED that defendants' motion for summary judgment be, and hereby is, granted.