**ANIMAL LEGAL DEFENSE FUND,
et al., Plaintiffs,**

**v.**

**Clayton YEUTTER, et al., Defendants.**

**Civ. A. No. 90–1872 (CRR).**

United States District Court,
District of Columbia.

April 1, 1991.

Valerie J. Stanley, Galvin, Stanley and Hazard, Washington, D.C., and Joyce Tischler, Animal Legal Defense Fund, San Rafael, Cal., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty. for District of Columbia, Jeffrey T. Sprung, Asst. U.S. Atty., Thomas W. Millet, Marsha S. Edney, Dept. of Justice, Washington, D.C., and Colleen Carroll, Agency Counsel, Dept. of Agr., for defendants.

OPINION OF CHARLES R. RICHEY UNITED STATES DISTRICT JUDGE

CHARLES R. RICHEY, District Judge.

The plaintiffs, two animal welfare groups and two individuals, allege that the defendants, the United States Department of Agriculture ("USDA"), the Secretary of USDA ("Secretary"), and the Administrator of the Animal Plant Health Inspection Service, have violated the mandate of the Federal Laboratory Animal Welfare Act ("FLAWA" or "Act"), 7 U.S.C. §§ 2131 et seq., by promulgating regulations which fail to include birds, rats, and mice as "animals" within the meaning of the Act. The defendants have filed a motion to dismiss the plaintiff's amended complaint for lack of standing and for failure to state a claim upon which relief can be granted.[1]

1. In addition, another organization, Putting People First, filed a motion to be heard as an *amicus curiae* on the question of the plaintiffs'

After carefully considering the defendants' motion to dismiss, the supporting and opposing memoranda, the underlying law, and the entire record in this case, the Court concludes that the plaintiffs have alleged sufficient injury to support their standing to bring this lawsuit. Moreover, the Court finds that the plaintiffs have stated a claim upon which relief may be granted. Accordingly, the defendants' motion to dismiss shall be denied.

## I. Background

Congress enacted the Federal Laboratory Animal Welfare Act, 7 U.S.C. §§ 2131 *et seq.*, to insure, *inter alia*, "that animals intended for use in research facilities ... are provided humane care and treatment." 7 U.S.C. § 2131(1). Therefore, the Secretary was charged with promulgating regulations prescribing standards for the proper treatment of animals. § 2143(a)(1).[2] To facilitate enforcement of these standards, the Secretary requires regulated owners or users of animals covered by the Act to submit annual reports concerning their compliance with the appropriate standards. 9 C.F.R. § 2.36. These reports are then summarized in the Secretary's annual report to Congress, as required by 7 U.S.C. § 2155.

"Animals" are defined in the Act to mean

any live or dead dog, cat, monkey (nonhuman primate mammal), guinea pig, hamster, rabbit, or such other warm-blooded animal, as the Secretary may determine is being used, or is intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet; but such term excludes horses not used for research purposes and other farm animals ...

§ 2132(g). The regulations implementing this section further refine the definition of

animal by explicitly excluding rats, mice, and birds.[3] 9 C.F.R. § 1.1(n). The exclusion of rats, mice, and birds dates from the first regulations implementing the Act, promulgated in 1971. *See* 36 Fed.Reg. 24,-919 (1971). After a 1985 amendment of the Act, individuals and groups concerned about the welfare of these fauna suggested that the exclusion of rats, mice and birds be dropped. The USDA refused to make this change, *see* 54 Fed.Reg. 10,823–24 (1989), and two animal welfare organizations filed a petition with the USDA for a rulemaking to amend the regulation. When the USDA denied the petition in June 1990, the plaintiffs filed this suit. The plaintiffs are the two animal welfare advocacy organizations, and an individual member of each organization.

## II. Analysis

### A. Introduction

A court may grant a motion to dismiss only when the moving party has shown "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Moreover, "the complaint must be 'liberally construed in favor of the plaintiff[s],' who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979) (quoting *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969)).

### B. Lack of Standing

Before the Court may reach the merits of the case, there is a threshold inquiry that must be satisfied—whether these plaintiffs have standing to challenge this particular agency action. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986).

standing to sue on behalf of birds, rats and mice.

**2.** Section 2143(a)(1) provides, in pertinent part: "The Secretary shall promulgate standards to govern the humane handling, care, treatment, and transportation of animals by ... research facilities."

**3.** By some estimates, rats, mice, and birds are the subjects of more than half of all experimentation using animals. *See* Cohen, "The Legality of the Agriculture Department's Exclusion of Rats and Mice from Coverage under the Animal Welfare Act," 31 St. Louis U.L.J. 543 n. 6 (1987).

The Court's jurisdiction to review these regulations is based on section 10(a) of the Administrative Procedure Act ("APA"), which provides judicial review to any person "suffering legal wrong because of an agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."[4] 5 U.S.C. § 702. Therefore, the party seeking review of USDA's failure to amend the regulations implementing the Act must show either that he has suffered legal wrong caused by failure to amend the regulations, or is adversely affected by it within the meaning of the Act. *See Lujan v. National Wildlife Federation,* —— U.S. ——, 110 S.Ct. 3177, 3184, 111 L.Ed.2d 695 (1990).

■ Because the plaintiffs are not claiming to be the victims of a legal wrong, their standing is based on being aggrieved or adversely affected by the unamended regulations. To prevail against this standing challenge, the plaintiffs must meet a broad two-part test. First, they must plausibly allege injury in fact derived from the agency action,[5] and second, they must assert that the injury is within the zone of interests protected by the Act. *Capital Legal Found. v. Commodity Credit Corp.,* 711 F.2d 253, 259 (D.C.Cir.1983). The first part is constitutionally mandated; the second is based on prudential concerns. *Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 936–37 (D.C.Cir.1986), *vacated on other grounds,* —— U.S. ——, 110 S.Ct. 1329, 108 L.Ed.2d 469 (1990). The asserted injury "need not be large or intense, an identifiable trifle suffices." *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973) (*"SCRAP"*).

In support of their standing to bring this suit, the plaintiffs identify several different types of injuries. These may be categorized as injuries to the plaintiff organizations as organizations, injuries to the individual members of the plaintiff organizations for which the plaintiff organizations are suing, injuries suffered by the individual plaintiffs for which the individuals are suing, and injuries suffered by the animals for which the plaintiff organizations are suing. Because the Court finds that the injuries to the plaintiff organizations survive the defendants' motion to dismiss, the Court need not address the remaining contentions on standing. *See Watt v. Energy Action Educational Foundation,* 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981).

■ The plaintiff organizations claim first that the regulation, by failing to include rats, mice and birds within the Act's protections and reporting requirements, injures the organizations by hindering their ability to disseminate to their members information about the treatment and conditions of these fauna. An organization with a primary function of disseminating data may be injured by an agency's failure to provide or collect that information. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982); *Action Alliance,* 789 F.2d at 936–39; *Scientists' Institute for Public Information, Inc. v. AEC,* 481 F.2d 1079, 1087 n. 29 (D.C.Cir.1983). To sustain informational standing, a plaintiff must assert a plausible link between the injury to their organizational activities and the agency action. *Competitive Enterprise Inst. v. NHTSA,* 901 F.2d 107, 122–23 (D.C.Cir. 1990). Moreover, the information must be essential to the organization's activities such that its absence renders those activities infeasible. *Id.* at 122. Finally, the organization's programmatic goals must be within the zone of interests protected by the statute. *Id.* at 123.

---

**4.** The plaintiffs' challenge to the regulations, and the USDA's failure to amend them, must proceed under the APA because, unlike the Endangered Species Act or the Marine Mammal Protection Act, the Act does not create any private rights of action. *See International Primate Protection League v. Institute for Behavioral Research, Inc.,* 799 F.2d 934, 940 (4th Cir.1986),

*cert. denied,* 481 U.S. 1004, 107 S.Ct. 1624, 95 L.Ed.2d 198 (1987).

**5.** The injury in fact prong of standing encompasses three constitutional components—injury in fact, causation, and redressability. *Von Aulock v. Smith,* 720 F.2d 176, 180 (D.C.Cir.1983).

The plaintiffs allege that the lack of data on the condition of mice, rats and birds, data which would be available if these fauna were considered "animals" under the Act, renders their program of reporting to their members infeasible. The defendants counter that the primary function of the plaintiff organizations, the advocacy of better conditions for all fauna, is not sufficiently hindered, nor hindered at all, by lack of government data on rats, mice and birds.

While it is true that some activities of the plaintiff organizations might not be prevented by the USDA regulations, the defendants mischaracterize the plaintiffs' burden under the motion to dismiss. For an agency action or inaction to constitute an injury for standing purposes, it is not necessary that *all* activities of an organization be made totally infeasible thereby, but only that an activity that is germane to the organization's purpose be significantly hindered. *See Action Alliance,* 789 F.2d at 937. The standing requirement of Article III is satisfied when there is sufficient injury to the plaintiffs to give rise to an actual case or controversy. *See Hodel v. Irving,* 481 U.S. 704, 711, 107 S.Ct. 2076, 2080, 95 L.Ed.2d 668 (1987). This injury need not be potentially fatal to the plaintiffs; it need only be significant enough that the ensuing controversy assuredly will be vigorously contested. *SCRAP,* 412 U.S. at 689 n. 14, 93 S.Ct. at 2417 n. 14; *Action Alliance,* 789 F.2d at 937. The plaintiff organizations have adequately alleged a direct, adverse impact on their informational activities by the USDA's refusal to consider the majority of these animals to be "animals" covered by the FLAWA. *See Havens Realty,* 455 U.S. at 379, 102 S.Ct. at 1124; *Action Alliance,* 789 F.2d at 937; *Scientists' Institute for Public Information,* 481 F.2d at 1086 n. 29.

"Dismissal on the pleadings is inappropriate even if 'the extreme generality of [a] complaint' leaves injury in fact in doubt, when standing requirements may be satisfied upon affording plaintiffs 'an opportunity to make more definite the allegations of the complaint.'" *Action Alliance,* 789 F.2d at 938 n. 6 (quoting *Havens Realty,* 455 U.S. at 377–78, 102 S.Ct. at 1123–24). Similar to the plaintiffs in *Action Alliance* and *Havens Realty,* the plaintiff organizations here plead that the agency's inaction denies them "access to information and avenues of redress they wish to use in their routine information-gathering ... activities. Unlike the mere 'interest in a problem' or ideological injury in *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), the [plaintiff] organizations have alleged inhibition of their daily operations, an injury both concrete and specific to the work in which they are engaged." *Action Alliance,* 789 F.2d at 938.[6]

Although the plaintiffs have asserted that they are aggrieved by the USDA's action, they must still meet the prudential prong of the standing test by showing that their injury is within the zone of interests that the Act seeks to protect. *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Action Alliance,* 789 F.2d at 936. The zone of interests test is "a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision." *Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). If the plaintiff is not the subject of the challenged action, the test "denies a right of review if the plaintiff's interests are so

---

**6.** In addition to alleging sufficient injury, the plaintiffs satisfy the causation and redressability components of the injury in fact requirement of standing. In contrast to cases in which the plaintiffs' injury resulted from the action of third parties, *see Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), here the complaint targets the failure of the USDA to proper-ly promulgate regulations compatible with the general requirements of the FLAWA. *See Action Alliance,* 789 F.2d at 938–39. An order requiring USDA to issue regulations, as plaintiffs allege are required by the FLAWA, would cure the injuries plaintiffs allege. Accordingly, the plaintiffs meet all of the Article III criteria for standing. *Id.* at 939.

marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of Congressional purpose to benefit the would-be plaintiff." *Id.* Liberally construing the complaint in favor of the plaintiffs as required on a motion to dismiss, *Jenkins*, 395 U.S. at 421, 89 S.Ct. at 1848, the Court finds that the defendants have failed to demonstrate that it cannot be assumed that Congress intended to permit this lawsuit. *See Action Alliance*, 789 F.2d at 939 & n. 11; *Animal Welfare Institute v. Kreps*, 561 F.2d 1002, 1010 & n. 44 (D.C. Cir.1977).

The information that the plaintiff organizations are seeking to provide to their members is that which Congress mandated must be annually reported. § 2155. Moreover, the goal of the plaintiffs in seeking to disseminate that information is the same as that of Congress in enacting the requirement: to ensure that laboratory animals are treated in a humane manner. § 2131. This is not a case where the organizations' use of the data would be inconsistent with the purpose for which it was gathered, *see Competitive Enterprise*, 901 F.2d at 124, or where the plaintiffs are seeking to bypass the administrative enforcement provisions to create their own standards through the use of private lawsuits, *see International Primate Protection League*, 799 F.2d at 940. Here the plaintiffs are seeking to monitor the proper enforcement of the Act in accord with its purposes. Thus, plaintiffs' asserted injuries are within the zone of interests of the Act.

### C. Failure to State a Claim Upon Which Relief Can Be Granted

 Although agency actions generally are reviewable under section 10(a) of the APA, judicial review does not extend to actions that are within the discretionary authority of the agency. 5 U.S.C. § 701(a)(2). This grant of discretion can be in the form of a specific grant of authority from the Congress. Discretion is also committed to an agency when "the statute is so drawn that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). If, however, the agency action is an abuse of discretion, it may be set aside by a reviewing court. 5 U.S.C. § 706(2)(A). An abuse of discretion may be found if there is "no evidence to support the decision or if the decision is based on an improper understanding of the law." *Jaimez–Revolla v. Bell*, 598 F.2d 243 (D.C.Cir.1979). When review of an agency rulemaking is appropriate, and the action is not an abuse of discretion, review is limited to a determination of whether the agency's interpretation of the statute is reasonable. *Chevron, U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 n. 11, 104 S.Ct. 2778, 2781 n. 11, 81 L.Ed.2d 694 (1984). When the agency action is a refusal to engage in a rulemaking, the scope of judicial review is even narrower than that of normal agency actions. *American Horse Protection Ass'n v. Lyng*, 812 F.2d 1, 4–5 (D.C.Cir.1987). To prevail ultimately, the plaintiffs must prove that the USDA's exclusion of rats, mice and birds from the definition of "animal" and its refusal to promulgate regulations for their care was arbitrary and capricious, an abuse of discretion, or otherwise not in accord with the law. *Id.* at 4.

 The USDA's primary argument to dismiss the plaintiffs' complaint for failure to state a claim is that the language of the definitional statute shows that Congress committed absolute discretion to the USDA to determine the meaning of the term "animal." However, the plain language of the statute does not settle this argument. While the statute provides a role for the Secretary, this role appears limited to a determination of whether a warm-blooded animal "is being used, or is intended to for use, for research, testing, experimentation, or exhibition purposes, or as a pet." 7 U.S.C. § 2132(g). Moreover, because these criteria may constitute clear standards by which the Secretary's determination can be judged, the doctrine of *Chaney* does not

 

necessarily insulate this determination from judicial review. The Secretary has the authority to determine whether fauna are being used for the purposes enumerated in the statute, but does not clearly have the authority or the discretion to determine that fauna which are being used for these purposes are not "animals" within the meaning of the Act.[7] The Secretary unquestionably would be within his congressionally delegated discretion if he determined that rats, mice, and birds are not the subject of the Act's enumerated uses, a finding that the Secretary has not made, and does not urge here. Because the defendants have not conclusively proven that the USDA's action was "within the scope of authority delegated to the agency by the statute," *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983), the Court cannot dismiss the complaint under Fed.R.Civ.P. 12(b)(6).[8]

### III. Conclusion

After liberally construing the complaint in favor of the plaintiffs as required under a motion to dismiss, the Court concludes that the plaintiffs are persons aggrieved by an agency action within the meaning of the relevant statute, and therefore have standing to seek judicial review. Moreover, the Court finds that the Secretary was not necessarily acting within the discretionary authority delegated by Congress when he determined that birds, mice and rats are not covered by the FLAWA. Thus, the plaintiffs have stated a claim. For the foregoing reasons, the defendants' motion to dismiss is denied.

---

[7]. Nor does the legislative history support the defendants' contention that the agency has the absolute discretion to define the coverage of the bill. Although the Act has been amended several times, and language which would specifically overturn the exclusion has not been adopted, the language of the Act does not now, and never has, explicitly given the Secretary the discretion to determine that warm-blooded animals used in laboratory experiments are not "animals" within the Act. When Congress reenacts legislation without significant change, it is presumed to be aware of and to ratify previous administrative interpretations of the statute. *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1978); *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975). As valuable as this presumption might be as a guide to determining legislative intent, it is not irrebuttable, and its mere assertion is not sufficient to prove that the plaintiffs can not prevail in their claim that the agency action was beyond the discretion of the agency.

[8]. Because the Court concludes that the defendants have not met their burden of showing that the plaintiffs, with all inferences construed in their favor, cannot prevail on the merits, the Court need not reach the issue of whether USDA's interpretation of the Act was reasonable at this stage of the case.