**ANIMAL LEGAL DEFENSE FUND, et al., Plaintiffs,**

v.

**Edward R. MADIGAN, et al., Defendants.**

Civ. A. No. 90–1872 (CRR).

United States District Court, District of Columbia.

Jan. 8, 1992.

Valerie J. Stanley, Galvin & Stanley, Washington, D.C., with whom Joyce Tischler, Animal Legal Defense Fund, San Rafael, Cal., was on brief, for plaintiffs.

Marsha S. Edney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Thomas Millet, Dept. of Justice, and Colleen Carroll, of counsel, Dept. of Agriculture, Washington, D.C., were on brief, for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

The plaintiffs, two animal welfare groups and two individuals, allege that the defendants, the United States Department of Agriculture ("USDA"), the Secretary of USDA ("Secretary"), and the Administrator of the Animal Plant Health Inspection Service, have violated the mandate of the Federal Laboratory Animal Welfare Act ("FLAWA" or "Act"), 7 U.S.C. §§ 2131 *et seq,* by promulgating regulations which fail to include birds, rats, and mice as "animals" within the meaning of the Act. The parties have filed cross motions for summary judgment.

After carefully considering the parties' motions for summary judgment, the supporting and opposing memoranda, the arguments of counsel, the underlying law, and the entire record in this case, the Court concludes that the plaintiffs have success-

fully demonstrated that the agency's interpretation of the statute is arbitrary and capricious. Accordingly, the Court shall grant the plaintiffs' motion for summary judgment, and shall deny the defendants' motion for summary judgment.

## I. Background

Congress enacted the Federal Laboratory Animal Welfare Act, 7 U.S.C. §§ 2131 et seq, to insure, inter alia, "that animals intended for use in research facilities ... are provided humane care and treatment." 7 U.S.C. § 2131(1). Therefore, the Secretary was charged with promulgating regulations prescribing standards for the proper treatment of animals. § 2143(a)(1).[1] To facilitate enforcement of these standards, the Secretary requires regulated owners or users of animals covered by the Act to submit annual reports concerning their compliance with the appropriate standards. 9 C.F.R. § 2.36. These reports are then summarized in the Secretary's annual report to Congress, as required by 7 U.S.C. § 2155.

"Animals" are defined in the Act to mean

> any live or dead dog, cat, monkey (nonhuman primate mammal), guinea pig, hamster, rabbit, or such other warm-blooded animal, as the Secretary may determine is being used, or is intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet; but such term excludes horses not used for research purposes and other farm animals
> ...

§ 2132(g). The regulations implementing this section track this language, but, in addition, explicitly exclude rats of the genus *rattus*, mice of the genus *mus*, and birds from the definition.[2] 9 C.F.R. § 1.1(n). The exclusion of rats, mice, and birds dates from the first regulations implementing the Act, promulgated in 1971. See 36 Fed.Reg. 24,919 (1971). After a

1985 amendment of the Act, individuals and groups concerned about the welfare of these fauna suggested that the exclusion of rats, mice and birds be dropped. The USDA refused to make this change, see 54 Fed.Reg. 10,823–24 (1989), and two animal welfare organizations filed a petition with the USDA for a rulemaking to amend the regulation. When the USDA denied the petition in June 1990, the plaintiffs filed this suit. They seek, inter alia, declaratory judgment and an injunction preventing defendants from excluding birds, rats, and mice from the definition of "animal" in applying and enforcing the Act. Plaintiffs also seek an order setting aside the denial of plaintiffs' rulemaking petition and directing defendants to promulgate regulations including birds, rats and mice in the definition of animal and setting standards for their care and to reconsider the denial of the rulemaking petition. Amended Compl. at 31–33.

On April 1, 1991, this Court denied the defendants' Motion to Dismiss, holding that the plaintiffs have standing to bring this action and stated a claim for relief. See Opinion filed April 1, 1991. 760 F.Supp. 923.

## II. Analysis

### A. Introduction

Summary judgment is awarded when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–9, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Where there is a properly supported motion for summary judgment, the adverse party may not rest upon the "mere allegations or denials" of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Lujan v. National Wildlife Federation,* —— U.S.

---

1. Section 2143(a)(1) provides, in pertinent part: "The Secretary shall promulgate standards to govern the humane handling, care, treatment, and transportation of animals by ... research facilities."

2. By some estimates, rats, mice, and birds are the subjects of more than half of all experimentation using animals. *See* Cohen, "The Legality of the Agriculture Department's Exclusion of Rats and Mice from Coverage under the Animal Welfare Act," 31 St. Louis U.L.J. 543 n. 6 (1987).

——, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). The moving party is also entitled to summary judgment upon a showing that there is an absence of evidence supporting an essential element of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ Although agency actions generally are reviewable under section 10(a) of the APA, judicial review does not extend to actions that are within the discretionary authority of the agency. 5 U.S.C. § 701(a)(2). This grant of discretion can be in the form of a specific grant of authority from the Congress. Discretion is also committed to an agency when "the statute is so drawn that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). An agency's refusal to initiate enforcement proceedings is discretionary and unreviewable, unless Congress has otherwise indicated. *Id.* at 838, 105 S.Ct. at 1659. Agency refusals to institute rulemaking proceedings, on the other hand, are subject to judicial review, but the scope of that review is extremely narrow, and the agency is entitled to a great deal of deference. *American Horse Protection Ass'n v. Lyng,* 812 F.2d 1, 4–5 (D.C.Cir.1987). However, the reviewing court must nonetheless determine whether the agency's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accord with the law pursuant to 5 U.S.C. § 706(2)(A). *Id.* at 4.

■ In *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court held that when a court reviews an agency's construction of a statute it administers, it is confronted with two questions. First is whether Congress has directly spoken to the precise question at issue. In determining the plain meaning of the statute, the court must look to the particular statutory language, and the language and design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.,* 486 U.S.

281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). If Congressional intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress". *Chevron* 467 U.S. at 842–3, 104 S.Ct. at 2781–82.

■ On the other hand, if "the court finds that the statute is silent or ambiguous with respect to the specific issue, the court does not simply impose its own construction on the statute ... Rather ... the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782 (footnotes omitted).

**B. The Secretary's Exclusion of Birds, Rats, and Mice from the Definition of Animal and Refusal to Institute Rulemaking Proceedings Are Reviewable by This Court**

■ The defendants argue that the language of the definitional statute shows that Congress committed absolute discretion to the USDA to determine the meaning of the term "animal," contending that the Act does not direct the Secretary to exercise his discretion in any particular way. The plain language of the statute does not support this view. The provision enumerates certain animals which are defined as animals under the Act, and provides that the definition also includes "such other warm-blooded animal, as the Secretary may determine is being used, or is intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet". 7 U.S.C. § 2132(g). As will be discussed in greater detail below, this provision limits the Secretary's discretion to determining whether a warm-blooded animal is used, or intended for use for those purposes specified in the definition. These criteria constitute standards by which the Secretary's determination can be judged. The statute does not confer upon the Secretary the authority or the discretion to determine that fauna which are being used for these purposes are *not* "animals" within the

meaning of the Act.[3] Therefore, the doctrine of *Chaney* does not insulate the exclusion of birds, rats, and mice from coverage under the Act from judicial review.

## C. The Secretary's Construction of the Statute to Exclude Birds, Rats, and Mice from the Definition of Animal Is Arbitrary and Capricious

■ As outlined above, in reviewing the agency's construction of a statute, the court must first look to see if the agency's construction violates the plain meaning of the statute and clearly expressed Congressional intent. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 842–3, 104 S.Ct. at 2781–82. The stated purposes of the Act are:

(1) to insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment;

(2) to assure the humane treatment of animals during transportation in commerce; and

(3) to protect the owners of animals from the theft of their animals by preventing the sale or use of animals which have been stolen.

7 U.S.C. § 2131.

The exclusion of birds, rats and mice from the protections of the Act serves none of these purposes, whereas their inclusion in the definition of animal helps to insure that animals intended for use in research facilities "are provided humane care and treatment" as the statute requires. *See* 7 U.S.C. § 2131(1).

A fair reading of the definitional section supports this interpretation. "Animal" is said to include certain specified species, "or such other warm-blooded animal, as the Secretary may determine is being used, or is intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet". 7 U.S.C. § 2132(g). The statute clearly contemplates the inclusion of those warm-blooded animals which the Secretary finds are used for research, testing or ex-

perimentation in the definition. The statute also specifically excludes certain animals from coverage, namely "horses not used for research purposes and other farm animals ..." 7 U.S.C. § 2132(g). The agency argues that the clause "as the Secretary may determine" limits the application of the Act only to the species that the USDA, in its discretion, chooses to include. That reading is strained and unlikely. The obvious reading is that Congress vested in the Secretary the task of determining which species are in fact used for the specified purposes. Since the USDA does not dispute that birds, rats, and mice are used for these purposes, it is inconsistent with the plain meaning of the statute and "the unambiguously expressed intent of Congress", *Chevron*, 467 U.S. at 842–3, 104 S.Ct. at 2781, to exclude them from coverage under the Act.

It appears that on other occasions the USDA has interpreted the statute as the Court interprets it here. In response to comments from the research industry urging USDA to exclude gerbils, (warm-blooded animals, like rats, mice, and birds, which are neither specifically included nor excluded from coverage of the Act), the agency stated that gerbils were regulated under the Act and it did not have the authority to exclude them from coverage. 54 Fed.Reg. 10824; Administrative Record at 27. *See also* 54 Fed.Reg. 36113; Administrative Record at 33 (including rodents, other than rats of the genus *Rattus* and mice of the genus *Mus*, within the definition).

■ Even if, *arguendo*, the Court were to find that the statute is ambiguous, the defendants' position is not tenable. Where a statute is ambiguous, the reviewing court must determine whether the agency's interpretation of the statute is "permissible". *Chevron* at 843, 104 S.Ct. at 2782. The defendants argue that their interpretation is permissible because it is long-standing and entitled to deference, is supported by the legislative history, and has been rati-

---

**3.** While the Secretary unquestionably would be within his Congressionally-delegated discretion if he determined that rats, mice, and birds are not the subject of the Act's enumerated uses, he has not made this finding and does not urge it here.

fied by Congress. The Court is not convinced by any of these arguments.

■ While the agency's interpretation of the statute is entitled to deference, it shall not be upheld merely because it is long-standing, but must have a reasonable basis in law. *See NLRB v. Hearst Publ.*, 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944). The Supreme Court stated in *Securities and Exchange Comm'n v. Sloan*, 436 U.S. 103, 118, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978) that the existence of a long-standing administrative practice, even if well explained, does not relieve a court of the "responsibility to determine whether that practice is consistent with the agency's statutory authority". In this case, the exclusion of rats, mice, and birds from the statute directly contravenes the statutory mandate of assuring humane treatment of laboratory animals. *See* 7 U.S.C. § 2131(1). The exclusion affirmatively communicates that regulated industries need not consider their treatment of these animals and will never be held in violation of the Animal Welfare Act regardless of whether these animals are denied food, water, appropriate housing or are subjected to excruciating and unrelieved pain. *See* Pl.'s Mot. for Summary Judgment, Affidavit of Dr. Patricia Knowles, ¶ 2–6, 8.

Neither is the Court persuaded by the defendants' claim that the legislative history supports their position. The defendants' argument is based primarily on a single sentence from the Committee report which states: "Under this section of the bill, it would be expected that the Secretary would designate additional species of those animals not previously covered as permitted by available funds and manpower." H.R.Rep. No. 1651, 91st Cong., 2d Sess. 6, *reprinted in* 1970 U.S.Code & Ad. News 5103, 5108 ("Committee Report"). While this sentence, in isolation, seems to support the defendants' position, in broader context it is not persuasive. The passage in which it appears states:

A new section 2(g) would be added to the Act which would define the term "animal" to include any live or dead dog or cat, monkey (nonhuman primate mammal), guinea pig, hamster, rabbit, or such other warm-blooded animals as the Secretary may determine is being used, or intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet. Under this section of the bill it would be expected that the Secretary would designate additional species of animals not previously covered as permitted by available funds and manpower.

*Id.* at 5108.

While the first sentence repeats the language of the definitional section as it was enacted, the second appears to contradict the first by giving the Secretary the power to choose which species are included on basis of resource availability rather than simply on their uses. One commentator has suggested that the passages may be reconciled "by reading the second to refer to the Secretary's power to designate additional species for the expenditure of Department funds and manpower, not for coverage by the Animal Welfare Act, which is mandated by the language of the Act." Cohen, Henry, *The Legality of the Agriculture Department's Exclusion of Rats and Mice from Coverage Under the Animal Welfare Act*, 31 St. Louis Univ. L.J. 543, 545 n. 19 (1987). The Court finds this reasoning persuasive. In addition, this single sentence does not provide much support in light of an overall reading of the legislative history, which supports the plaintiffs' view of the statute. *See generally* Cohen at 544–548 (and citations listed therein); *see also* Committee Report at 5104: "[t]his bill includes within its definition all warm-blooded animals designated by the Secretary with only limited and specifically defined exceptions."

■ When Congress reenacts legislation without significant change, it is presumed to be aware of and to ratify previous administrative interpretations of the statute. *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975). However, this argument "loses force where the regulations

are found to have violated the clear terms of the statute to begin with." *State of Ohio v. United States Dep't of the Interior,* 880 F.2d 432, 458 (D.C.Cir.1989). *See also Securities and Exchange Comm'n v. Sloan,* 436 U.S. at 121, 98 S.Ct. at 1713. Birds, rats and mice have been excluded from the Act by regulation since 1971. *See* 36 Fed.Reg. 24,919 (1971). Congress has amended the statute twice since then, in 1976 (Pub.L. 94–279, 90 Stat. 417) and in 1985 (Pub.L. 99–198, § 1751 *et seq.,* 99 Stat. 1645). The defendants argue that Congress' failure to amend the Act to include those species within the definition evinces acquiescence to and ratification of the regulation. This argument is not convincing in this instance. First, it is disputed whether or not Congress had actual knowledge of the regulation. Second, as discussed above, the regulation runs contrary to the clear Congressional policy articulated in the statute, 7 U.S.C. § 2131. In view of these circumstances, the Court shall not presume Congressional ratification from Congressional silence. *See Securities and Exchange Comm'n v. Sloan,* 436 U.S. at 120–121, 98 S.Ct. at 1712–1713.

Finally, even if the Court were to accept the Secretary's construction of the statute and find that the Secretary does have discretion to determine what animals are covered under the Act, the Secretary's exclusion of birds, rats, and mice would be arbitrary and capricious. The defendants state that in deciding to exclude birds, rats and mice, the agency considered the number of animals involved, the resources available, and the approximate cost of regulation. See Def.'s Mot. for Summary Judgment, Ex. A, Crawford Decl. at ¶ 4–12. Yet birds, rats, and mice could be included in the definition without requiring the expenditure of significant agency resources. The 1985 amendments to the Act included many provisions for the protection of animals in

laboratories that are self-implementing by the regulated industries. *See e.g.,* 7 U.S.C. § 2143(a)(7)(A) (requiring each facility to provide information on procedures likely to produce pain or distress in an animal and assurances that alternatives to the procedures were considered). In addition, the regulations include "Specifications for the Humane Handling, Care, Treatment, and Transportation of Warmblooded Animals Other Than Dogs, Cats, Rabbits, Hamsters, Guinea Pigs, Nonhuman Primates, and Marine Mammals". 9 C.F.R. § 3.125 *et seq.* These regulations would be applicable to the care of birds, rats, and mice but for the regulation excluding them from the definition of animal. 9 C.F.R. § 1.1. Such regulations would impose affirmative obligations on researchers and others to treat the animals humanely without requiring any action from the agency.[4] For all of these reasons, the agency's exclusion of the animals is arbitrary and capricious and not in accordance with the law.

D. The Secretary's Refusal to Institute Rulemaking Proceedings Regarding the Treatment of Birds, Rats, and Mice Is Arbitrary and Capricious

In addition to challenging the agency's construction of the statute to exclude birds, rats, and mice from the definition of animal, the plaintiffs challenge the defendants' denial of their rulemaking petition. Plaintiffs seek two major amendments to the regulations. First, they ask the agency to amend the definition of "animal" in the regulations so that birds, rats, and mice are not excluded. Second, they ask that the agency promulgate regulations setting standards for their care. *See* Pl.'s Petition for Rulemaking, Admin.Rec. 1145, 1147.

As discussed above, the scope of review of an agency's failure to institute a

---

**4.** The Court recognizes that enforcement of these regulations would require some expenditure of agency resources. Yet even without any active agency enforcement, the inclusion of rats, mice and birds under the Act would send an important message to those responsible for their care—that the care of these animals is something for which they are legally accountable and

is an important societal obligation. This message is much more consistent with the purposes of the Act than the current message the exclusion of these animals conveys: that the researchers may subject the birds, rats and mice to cruel and inhumane conditions, that such conduct is sanctioned by the Government and has no legal consequences.

rulemaking proceeding is extremely narrow. Refusals to institute rulemaking proceedings have been overturned only rarely, primarily where there have been plain errors of law. *American Horse Protection Ass'n v. Lyng,* 812 F.2d 1, 5 (D.C.Cir.1987) (citations omitted). The reviewing court must nevertheless consider "whether the relevant factors were considered and whether the ultimate decision reflects reasoned decision-making." *Professional Drivers Council v. Bureau of Motor Carrier Safety,* 706 F.2d 1216, 1220 (D.C.Cir.1983). This inquiry should include consideration of "the petition for rulemaking, comments pro and con ... and the agency's explanation of its decision to reject the petition." *Lyng* at 5, citing *WWHT, Inc. v. FCC,* 656 F.2d 807, 817–818 (D.C.Cir.1981).

On March 15, 1989, the Secretary responded to public comments on the definitional regulation by stating:

> Neither are we changing our definition of 'animal' to include birds, rats and mice. We do have the authority to regulate these animals, though except for wild rats and mice, we have never covered them in our regulations. However, in response to the comments we received, we are considering developing regulations and standards for them...

54 Fed.Reg. 10,823–824 (March 15, 1989).

On November 15, 1989, plaintiffs filed a petition for rulemaking, requesting that defendants conduct rulemaking proceedings to include birds, rats, and mice in the definition of "animal" and promulgate standards for their care. Admin.Rec. 1145–1159. On June 8, 1990, the defendants responded as follows:

> [i]n considering your request that we exercise our authority to include birds, rats and mice under our regulations, we have carefully reviewed the Act, its legislative history, and our current regulatory and enforcement program. We have also considered the manpower, funds, and other resources available to administer effectively our animal welfare program. Based upon this review, we have concluded that it is not appropriate to initiate

rulemaking to regulate the handling of birds, rats and mice at this time.

Admin.Rec. 1160–1161.

In making this determination, the agency "considered the approximate number of animals involved, the resources available to APHIS [the Animal and Plant Health Inspection Service of USDA], the likelihood of increased resources, and the approximate cost of APHIS in terms of manpower and funds." Def.'s Mot. for Summary Judgment, Decl. of Dr. Richard L. Crawford ¶ 5. The agency concluded that including birds, rats and mice would double or triple APHIS' workload and lead to declined enforcement of the Act as to other animals. *Id.* The "Preliminary Analysis of the Potential Impacts of Including Rats, Mice, and Birds Under the Animal Welfare Act" (January 1990), Admin.Rec. at 1119–1144 ("Preliminary Analysis"), on which defendants appear to have relied in making this determination, supports the conclusion that including birds, rats and mice would be costly.

The defendants argue that the legislative history "makes clear" that the availability of resources and manpower are factors to be considered in designating additional species to be covered under the Act. Def.'s Mot. for Summary Judgment at 21–22. However, the Court has determined that this is an incorrect construction of the Act with regard to determining what animals are covered. Rather, in designating new animals to be protected under the Act, the Secretary is to determine whether they are used, or intended for use "for research, testing, experimentation, or exhibition purposes." 7 U.S.C. § 2132(g). The agency does not dispute that birds, rats, and mice are used for these purposes. Therefore, as discussed above, the agency's exclusion of birds, rats, and mice from the definition of animal is arbitrary and capricious and violates the Act. Therefore, the agency's refusal to amend its regulations to eliminate this exclusion is arbitrary and capricious and a clear violation of the statute as the Court has construed it here.

The plaintiffs also request that the agency promulgate specific regulations to gov-

ern the treatment of birds, rats, and mice. In light of the existence of general regulations that would govern the treatment of birds, rats, and mice if they were included in the definition of "animal", *see* 9 C.F.R. § 3.125 *et seq.*, the decision to promulgate more specific regulations is subject to more agency discretion than the decision as to whether they are covered by the Act at all. Therefore, the agency appropriately considered issues of resource and personnel availability in this context. However, the agency's explanation of its refusal to enact these regulations is troubling. First, while the Preliminary Analysis considers in great detail the expenses that would be entailed in expanding coverage of the Act, only a few sentences are devoted to consideration of the impact of the proposed changes on the welfare of animals, which is, after all, the purpose of the agency's statutory mandate:

> The potential impact of these regulations on research facilities are not all negative. The Act intends to improve the welfare of the regulated species. The systematic review of research protocols involving rats, mice, and birds would insure that research procedures minimize pain, avoid duplication of research experiments, and consider alternatives to animal usage.

Preliminary Analysis at 13; Admin.Rec. at 1132.

The agency makes no attempt to factor these benefits into its analysis of the desirability of regulation in this area; rather it focuses only on issues of resources and staffing.[5] The plaintiffs have offered compelling evidence that including birds, rats, and mice in the definition of animal would further the goals of the Act. *See e.g.,* Pl.'s Mot. for Summary Judgment, Aff. of Dr. Patricia A. Knowles, Aff. of Joyce Tischler, Att. B. The agency admits as much, but declines to consider the benefit to animals

as worthy of serious consideration as it decides how best to carry out its mandate. The Court finds this glaring omission in analysis arbitrary and capricious.

As stated by plaintiff William S. Strauss, "[b]irds, rats and mice share with other animals the same basic needs for food, water, shelter, and veterinary care when injured. Birds, rats and mice share with other animals the ability to experience pain and suffering because they have complex nervous systems. There are humane and proper ways of caring for and treating these animals ..." Pl.'s Mot. for Summary Judgment, Aff. of William S. Strauss, ¶ 6. The Federal Laboratory Animal Welfare Act was designed to insure, *inter alia,* "that animals intended for use in research facilities ... are provided humane care and treatment." 7 U.S.C. § 2131(1). The defendants' failure to pursue the humane care and treatment of birds, rats and mice, both by excluding them from the definition of "animal" and by refusing to issue regulations governing their care, flies in the face of that mandate and indicates that the agency has " 'been blind to the source of its delegated power' ". *Lyng* at 5 (citation omitted). This inertia on the part of the agency allows the mistreatment of birds, rats, and mice to continue unchecked by the agency charged with the protection of laboratory animals. The Court cannot believe that this is what Congress had in mind.

Accordingly, the Court finds that the agency did not consider the proper factors in refusing to institute rulemaking proceedings. Specifically, regarding the exclusion of birds, rats, and mice from the definition of animal, the agency focused on issues of availability of resources and personnel when it should have focused on whether birds, rats and mice are used for purposes

---

5. The agency's argument that it lacks the resources to implement these regulations might be more convincing if the agency sought more resources to pursue its mandate. In fact, the plaintiffs have shown that the agency intentionally sought funding decreases and one year requested that its Animal Welfare Program be eliminated. Aff. of Martin L. Stephens, Ph.D., ¶ 15. This evidence suggests that the agency may have lost sight of its Congressional mandate under the Act. A member of the President's Cabinet charged with executing the law should not be a prisoner of his own bureaucracy and allowed to argue that his own failure to request funding to comply with an Act of Congress is a proper excuse for his failure to pursue his statutory obligations.

which allow them to fall within the protection of the Act.[6] Regarding the agency's refusal to promulgate regulations for the treatment of birds, rats, and mice, the agency focused exclusively on issues of availability of resources without considering whether the desired regulations would further the purposes of the Act and benefit the animals the agency is charged with protecting. In view of these fundamental errors, the Court finds that this is one of those exceptional circumstances in which the agency's refusal to grant a rulemaking petition must be overturned. *See Lyng,* 812 F.2d at 3–8.

■ While the plaintiffs seek an order directing the agency to institute rulemaking proceedings, this remedy is appropriate only in rare circumstances. The preferred remedy is to require the agency to reconsider its denial of the petition, in light of the interpretation of the law set forth by the Court. *Lyng* at 7, citing *WWHT, Inc. v. F.C.C.,* 656 F.2d at 819. The Court shall take that approach here.

### III. Conclusion

For all of the reasons previously stated, the plaintiffs' Motion for Summary Judgment shall be granted, and the defendants' Motion for Summary Judgment shall be denied. The Court further holds that the agency's interpretation of the definitional statute of the Federal Laboratory Animal Welfare Act, 7 U.S.C. § 2132(g) to exclude birds, rats of the genus *rattus,* and mice of the genus *mus* from the definition of "animal" is arbitrary and capricious and violates the Act. The Court further holds that the agency's denial of the plaintiffs' rulemaking petition was arbitrary and capricious, evincing blindness to the source of the agency's statutory authority. Therefore, the Court shall remand this case to the agency, and order the USDA to reconsider its denial of the plaintiffs' rulemaking

petition in accordance with the law as articulated in this Opinion.

---

**6.** Moreover, in focusing on potential expenses associated with implementing the desired regulations, the agency failed to consider the fact that many of the protections of the Act could be extended to birds, rats, and mice without extensive expenditures by the agency. *See e.g.,* 9 C.F.R. § 3.125 *et seq.*