**ALTERNATIVES RESEARCH & DEVELOPMENT FOUNDATION, et al., Plaintiffs,**

v.

**Daniel GLICKMAN, Secretary of Agriculture, et al., Defendants.**

**No. Civ.A. 99–581(ESH).**

United States District Court, District of Columbia.

June 21, 2000.

8

Joseph Mendelson, III, International Center for Technology Assessment, Washington, DC, for plaintiffs.

Marsha Stelson Edney, U.S. Department of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

The plaintiffs, a non-profit organization, a private firm and an individual, allege that the defendants, the Secretary of the United States Department of Agriculture ("USDA") and the Deputy Administrator for Animal Care, Animal Plant Health Inspection Service, have violated the mandate of the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131, *et seq.*, by promulgating regulations that exclude birds, mice and rats from the definition of "animal" under the Act. Defendants move to dismiss on the grounds that all three plaintiffs lack standing to bring suit. In the alternative, defendants move to dismiss based on the grounds that the Secretary's exclusion of the three species is within his Congressionally delegated discretion and is therefore not subject to judicial review. Even if judicial review is appropriate, defendants argue that the Court should still dismiss the case out of deference to the USDA's reasonable interpretation of the AWA. Finally, defendants assert that the Court, in its discretion, should stay this lawsuit as premature on the grounds that the agency has under its consideration a petition brought by plaintiffs herein to amend its regulations to include protection for birds, rats and mice.

Based on a review of the pleadings, the record and the governing case law, this Court concludes that: (1) defendants' challenge to plaintiff Kristine Gausz's constitutional standing must be rejected as inconsistent with this Circuit's *en banc* decision in *Animal Legal Defense Fund, Inc. v. Glickman,* 154 F.3d 426 (D.C.Cir.1998) (hereinafter "ALDF III"); (2) the AWA does not grant to the USDA unreviewable discretion to determine which animals are covered under the AWA; (3) there is insufficient evidence at this stage to permit a determination as to whether defendants' exclusion of these animals is reasonable;

and (4) there is no basis to stay the lawsuit as being premature since it is purely speculative at this time whether any future agency action will change the status quo.

## BACKGROUND

Congress enacted the AWA to ensure that "animals intended for use in research facilities ... are provided humane care and treatment." 7 U.S.C. § 2131(1). The Act grants authority to the Secretary of Agriculture to promulgate regulations for the treatment of animals consistent with the stated purpose of the Act. 7 U.S.C. § 2143(a)(1). At issue in this case is the Secretary's definition of "animal," which the plaintiffs contend is unlawful in light of the statutory language of the AWA.

The AWA defines "animal" as:

any live or dead dog, cat, monkey (non-human primate mammal), guinea pig, hamster, rabbit, or such other warm-blooded animal, as the Secretary may determine is being used, or is intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet.

7 U.S.C. § 2132(g).

The USDA regulations further refine the definition of animal by including the six specifically identified species, but specifically excluding "[b]irds, rats of the genus Rattus and mice of the genus Mus bred for use in research ..." 9 C.F.R. § 1.1 (1990).[1] In 1990 two animal welfare organizations and two individuals brought suit challenging the Secretary's exclusion of birds, mice and rats. The suit alleged, as does the present action, that the Secretary's exclusion of birds, mice and rats was unlawful given the Congressional mandate to regulate "other such warm blooded mammal[s]." The suit was dismissed on appeal based on lack of standing. *See Animal Legal Defense Fund v. Espy,* 23 F.3d 496 (D.C.Cir.1994) (hereinafter "ALDF I") (vacating *Animal Legal De-*

---

1. By regulation, the USDA has excluded birds, rats and mice from coverage under the

Act dating back to 1971. *See* 36 Fed.Reg. 24,919 (1971).

fense Fund v. Madigan, 781 F.Supp. 797 (D.D.C.1992) (Richey, J.)). On April 29, 1998, plaintiffs Alternative Research & Development Foundation and In Vitro International Inc., and others filed a petition for rulemaking requesting that the Secretary amend the regulations to include birds, mice and rats. On January 28, 1999, USDA published the petition and requested comments. 64 Fed.Reg. 4356 (1999). As of yet, there has been no final agency decision on the plaintiffs' petition.

Plaintiffs subsequently filed this lawsuit, seeking declaratory and injunctive relief. In response, defendants have filed the instant motion to dismiss.

## ANALYSIS

The Court grants a motion to dismiss only when the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reaching this determination, the "complaint must be liberally construed in favor of the plaintiff[s], who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979) (quoting *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)).

The Court has jurisdiction to review the challenged regulations under § 10(a) of the Administrative Procedure Act (APA). This section provides judicial recourse to a plaintiff that is "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The plaintiffs in this case claim that they are each adversely affected by the USDA's failure to include birds, mice and rats in the regulation's definition of "animal."

As a threshold matter, however, the plaintiffs must show that they have standing to bring suit in order to survive defendants' motion to dismiss.

## I. STANDING

■ The question of standing involves both constitutional limitations on federal court jurisdiction as well as prudential limitations on its exercise. *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). To meet the constitutional requirement of standing, a plaintiff must show: (1) he has suffered an injury which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the alleged injury and conduct that is fairly traceable to the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff bears the burden of proving standing. *Id.*

■ Further, in order to secure judicial review under the APA, the plaintiff must satisfy the additional requirement of prudential standing. A plaintiff has prudential standing if his interests "arguably fall within the zone of interests protected or regulated by the statutory provision ... invoked in the suit." *Bennett*, 520 U.S. at 162–63, 117 S.Ct. 1154. The "zone of interests" test requires the court to discern the interests "arguably to be protected" by the statutory provision and then to determine if the plaintiff's interests are among them. *Nat. Cred. Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 492, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). This test does not require a showing of Congressional intent to benefit the plaintiff. *Id.* The plaintiff must show only that the interests affected by the agency action are arguably protected under the statute. *Id.* Prudential standing does not exist where the plaintiff's interests are so "marginally related to ... the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit" or if the plaintiff is only an incidental beneficiary of a statutory provision. *Clarke v. Securities Industry Ass'n*,

479 U.S. 388, 389, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987).

Here, the defendants' motion challenges the constitutional standing of plaintiff Gausz and the prudential standing of plaintiffs ARDF and In Vitro. However, given the Court's determination that Gausz has constitutional standing, it need not address the prudential standing of the remaining plaintiffs.[2]

## A. Plaintiff Gausz' Standing

Kristine Gausz is a psychology student at Beaver College. As part of her course requirements at the college, she participates in laboratory experiments involving rats. She alleges that as a result of the defendants' failure to include birds, mice and rats in the AWA's definition of "animal," Beaver College is permitted to use rats for laboratory experiments without providing them with humane care. The lack of humane care in the lab has caused the plaintiff regularly to observe laboratory rats that receive "inadequate housing, water, food, and veterinary care." Complaint, Para. 18. Gausz claims aesthetic and emotional injury resulting from her observation of these mistreated animals. She further alleges that she has spent her own time and money to "rectify the inhumane treatment" of the rats. Complaint, Para. 19.

## 1. Injury In Fact

■ Plaintiff Gausz states in her affidavit at ¶ 16 that she "want[s] to observe and study the laboratory rats, however, I am personally, aesthetically, emotionally, and profoundly disturbed when observing rats treated and cared for inhumanely. Repeatedly, I have observed rats that were suffering and subject to deplorable living conditions, which has been an assault on my senses." Based on these allegations, plaintiff claims that she has suffered a concrete and particularized injury to her aesthetic interest in studying rats in a humane environment. Based on the binding precedent established by this Circuit in *ALDF III*, this Court must agree that plaintiff's aesthetic interest is a cognizable interest sufficient to satisfy the requirement of constitutional standing.

■ As noted in *ALDF III*, "[t]he Supreme Court has repeatedly made clear that injury to an aesthetic interest in the observation of animals is sufficient to satisfy the demands of Article III standing." *ALDF III*, 154 F.3d at 432 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992);[3] *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 231 n. 4, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); and *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). Building on these precedents, the D.C. Circuit, in its *en banc* decision in *ALDF III*, refused to limit the confines of aesthetic standing to cases involving the elimination of a species or the deaths of particular animals, finding "no reason to import such a requirement into our standing doctrine so late in the day," but instead, it recognized that "government action that leaves some animals in a persistent state of suffering" can also cause serious aesthetic injury "capable of redress by the Court." 154 F.3d at 437–38.

In *ALDF III* plaintiff Marc Jurnove was a regular visitor to the Long Island Game Farm Park and Zoo ("Game Farm"). The plaintiff visited the Game Farm out of his "love of exotic animals, as well as for recreational and educational purposes." *Id.*

---

2. *See Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1232 (D.C.Cir.1996) ("For each claim, if constitutional and prudential standing can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim.")

3. As noted by the Supreme Court in *Defenders of Wildlife*, "the desire *to use* or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for purposes of standing." 504 U.S. at 562–63, 112 S.Ct. 2130 (emphasis added).

at 431. While visiting the Game Farm, the plaintiff observed primates housed in isolation—treatment that he believed to be inhumane. The inhumane treatment of the primates impaired his ability to "observe and enjoy" the animals. *Id.* at 432. The Circuit Court recognized that damage to Jurnove's interest in "seeing exotic animals living in a nurturing habitat" was sufficient to establish "injury in fact" for purposes of standing. *Id.* Moreover, the aesthetic interest in observing animals specifically included the interest in "'view[ing] animals free from ... inhumane treatment.'" *Id.* at 433 (quoting *Humane Society v. Babbitt,* 46 F.3d 93, 99 n. 7 (D.C.Cir.1995)). *See also Animal Welfare Institute v. Kreps,* 561 F.2d 1002, 1007 (D.C.Cir.1977) (recognizing the plaintiffs' aesthetic interest in observing Cape fur seals "under conditions in which the animals are not subject to ... inhumane treatment").

Nonetheless, defendants attempt to avoid the Circuit Court's holding in *ALDF III* by arguing that Ms. Gausz's injury is distinguishable from that of Mr. Jurnove because Mr. Jurnove and the plaintiffs in the other cases cited in *ALDF III* "were interacting with animals in conservation or recreation activities," whereas Ms. Gausz's injuries arose in the course of her employment. Defendants' Motion to Dismiss at 10–11. This distinction cannot withstand scrutiny.

As recognized by the D.C. Circuit, "the primary purpose of the [AWA] is to ensure the humane care and treatment of various animals used *in research* or for exhibition or kept as pets. 7 U.S.C. § 2131. To this end, the Act requires, *inter alia,* that the Secretary of Agriculture 'promulgate standards to govern the humane handling, care, treatment and transportation of animals by dealers, *research facilities,* and exhibitors.' *Id.* § 2143(a)(1)." *Animal Legal Defense Fund, Inc. v. Espy,* 29 F.3d 720, 722 (D.C.Cir.1994) ("*ALDF II*") (emphasis added). The Act makes no distinction between the quality of animal life in a zoo as opposed to in a research lab, but rather it focuses on the conditions under which animals live in both environments, and therefore, if the zoo-goer has standing, as was found in *ALDF III,* it necessarily follows that a researcher who witnesses the mistreatment of rats in her lab must have standing. For, as noted by the Court in *ALDF III,* since the AWA is motivated by "'considerations of humaneness toward animals, who are uniquely incapable of defending their own interests in court, ... it [is] eminently logical to allow groups specifically concerned with animal welfare to invoke the aid of the courts in enforcing the statute.'" 154 F.3d at 438 (citation omitted). *See also Lujan v. Defenders of Wildlife,* 504 U.S. at 566, 112 S.Ct. 2130 ("[i]t is clear that the person who observes *or works with* a particular animal threatened by a federal decision is facing perceptible harm.") (emphasis added).

In reaching this result, this Court is persuaded by the cogent analysis of this very issue by the Honorable Stephen F. Williams in his concurrence in *ALDF I,* which was cited with approval in *ALDF III,* 154 F.3d at 431. In *ALDF I,* Plaintiff Dr. Patricia Knowles, a scientist who had used rats and mice in her research, brought a claim, nearly identical to the one asserted by Gausz in this case, of aesthetic injury arising in the laboratory setting. Knowles planned to use rats and mice in future research and claimed that the exclusion of rats and mice from the regulations' definition of "animal" under the AWA would cause her professional and aesthetic injury in the future. The Court did not reach the issue of whether Knowles alleged injuries amounted to "injuries in fact," since it determined that Knowles lacked standing on other grounds. The Court found that that since Knowles had not conducted research in several years, her claim of injury resulting from future use of mistreated rats and mice in her research was too speculative, and as such, did not meet the additional element of constitutional standing, requiring that inju-

ries be "presently suffered or imminently threatened." *ALDF I*, 23 F.3d at 500. Judge Williams, however, writing separately, addressed the issue of whether her aesthetic injuries amounted to an "injury in fact." After noting that precedent had clearly recognized an aesthetic interest in observing animals, Judge Williams stated:

> The gulf between seeing experimental animals decently treated and seeing them cruelly treated seems every bit as great as that between seeing animals savoring their natural habitat and not seeing them at all; if there is any difference between the two types of loss, the former would seem more acute.... I can see no reason why the viewer's purpose in being near the animals should make a difference....

23 F.3d at 505 (Williams, J., concurring in part, dissenting in part).[4]

Given the express purpose of the AWA to ensure the humane treatment of animals, including those used in research, and the Court's holding in *ALDF III*, this Court must, for the reasons explicated by Judge Williams in *ALDF I*, find that there is no meaningful distinction between the aesthetic interest recognized in *ALDF III* and that presented by Ms. Gausz in this case. Therefore, the Court finds that plaintiff Gausz has satisfied the injury in fact prong of constitutional standing.

## 2. Causation

■ The Supreme Court has held that causation exists when a challenged agency rule authorized the conduct that allegedly caused the plaintiff's injury, if that conduct would be illegal otherwise. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). This Circuit has further explained that "injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality." *Telephone and Data Systems, Inc. v. FCC*, 19 F.3d 42, 47 (D.C.Cir.1994).

■ Gausz's complaint states that her injuries are the result of the allegedly illegal regulations promulgated by the USDA. She contends that if the regulation's definition of "animal" included rats, the laboratory would have been required by law to provide them with adequate food, water and care, and further, the lab would have been required to consider non-animal alternatives to the tests it performed on rats.[5]

The plaintiff in *ALDF III*, a frequent zoo visitor, challenged USDA regulations, which he alleged caused him aesthetic harm. Jurnove challenged the USDA regulations on the grounds that they failed to set forth sufficient minimum standards of care for zoo primates, as required by the AWA. Specifically, Jurnove asserted that the housing of incompatible species next to each other and the housing of primates in isolation constituted inhumane treatment. 154 F.3d at 439. According to Jurnove, the existing USDA regulations permitted these conditions. Based on these allegations, the Circuit Court found that plaintiff Jurnove satisfied the causation element of constitutional standing, since he alleged

---

4. *See also ALDF II*, 29 F.3d at 726 (Mikva, C.J., concurring) ("Had the [plaintiffs] challenging the Secretary's regulations alleged an interest in protecting the well-being of specific laboratory animals (an interest predating this litigation), I think [plaintiffs] would have had standing to challenge those regulations for providing insufficient protection to the animals.")

5. For those "animals" covered by the regulations, the Secretary must "promulgate standards to govern the humane handling, care,

[and] treatment ... of animals ... by ... research facilities." 7 U.S.C. § 2143(a)(1). In addition, research facilities using protected "animals" must "consider[ ] alternatives to any procedure likely to produce pain or distress in an experimental animal," 7 U.S.C. § 2143(a)(3)(B), and it must establish a research facility committee to "represent society's concerns regarding the welfare of animal subjects used [at the facility]." 7 U.S.C. § 2143(b)(1).

that the USDA had failed to adopt specific, minimum standards as required by the AWA and that the lack of regulations permitted the inhumane conditions at the zoo that caused his aesthetic injuries. 154 F.3d at 443.

The government, however, contends that this case is distinguishable from *ALDF III* since Gausz had control over the care of the laboratory rats whose suffering she witnessed. Indeed, Gausz's declaration mentions several occasions when she undertook to care for the rats in the laboratory. Her declaration also points out, however, that she only took these steps in response to mistreatment of laboratory rats that had already caused her aesthetic injury. Further, the plaintiff's declaration mentions several instances where she was powerless to control the care of the lab rats. For instance, the plaintiff alleges that she applied for a job in the laboratory that would have given her direct control over the rats' care, but she was ultimately denied the position. Further, Gausz alleges that she attempted to persuade the lab personnel to consider an alternative, non-animal test to the behavioral experiments the lab performed on the rats, but they would not consider her suggestion. Thus, there is no factual support for the defendants' distinction.

The government also contends that Gausz's injuries are not fairly traceable to the Secretary's exclusion of rats, since she treated her rats humanely without the benefit of regulations. The government argues that the regulations, as presently written, do not *require* that rats be treated inhumanely, and therefore, the regulations do not legally cause the rats' mistreatment. This argument is unpersuasive.

The D.C. Circuit rejected a similar argument in *ALDF III*. In *ALDF III*, the government challenged causation, asserting that the regulations at issue in no way affected the conditions that allegedly

caused the plaintiff's aesthetic injuries. The government argued that the "governing law simply permits the conditions ... rather than requiring animal exhibitors to follow allegedly inhumane practices." *ALDF III*, 154 F.3d at 441. The Court rejected any argument based on a distinction between permissive and mandatory government regulation, noting that it is not necessary for the law to compel a third party to act in the allegedly injurious way, but rather it is sufficient if "a challenged government action permitted the third party conduct ... when that conduct would have otherwise been illegal." *Id.* at 442.

The defendants' challenge to causation in this case mirrors the government's challenge in *ALDF III*. Here, just as in *ALDF III*, the challenged agency action permits conditions that the plaintiff alleges caused her injury. As *ALDF III* makes clear, it is no defense that the challenged action is merely permissive of the injurious conditions.

In sum, the injuries alleged by the plaintiff are fairly traceable to the defendants' allegedly illegal exclusion of rats from the AWA regulations, and as such, are sufficient to satisfy the causation prong of constitutional standing analysis. Having satisfied the elements of constitutional standing,[6] the motion to dismiss as to Ms. Gausz on the grounds that she lacks constitutional standing must be rejected.

## II. REVIEWABILITY

In addition to their challenge to plaintiffs' standing, defendants argue that their motion to dismiss should be granted because the Secretary's discretion to exclude certain animals from the Act is committed by law to his discretion and is not subject to judicial review.

---

**6.** The Court need not address the redressability element of standing, since defendants do

not raise this issue in their motion.

■ There is a strong presumption in favor of judicial review of agency actions, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and this presumption is only rebutted by showing that "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031, 1043 (D.C.Cir.1979) (quoting 5 U.S.C. § 701(a)). Neither exception to the presumption of judicial review is applicable to this case.

Most importantly, the plain language of the statute does not support the defendants' argument that Congress has committed absolute discretion to the USDA to determine the meaning of the term "animal." The AWA defines animal as:

> The term "animal" means any live or dead dog, cat, monkey (nonhuman primate mammal), guinea pig, hamster, rabbit, or such other warm-blooded animal, as the Secretary may determine is being used, or is intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet; but such term excludes horses, not used for research purposes and other farm animals, such as, but not limited to livestock or poultry used or intended for use for food or fiber, or livestock or poultry used or intended for use for improving animal nutrition, breeding, management, or production efficiency, or for improving the quality of food or fiber. With respect to a dog, the term means all dogs including those used for hunting, security, or breeding purposes. 7 U.S.C. § 2132(g).

As was found by the Honorable Charles R. Richey, in *Animal Legal Defense Fund v. Yeutter*, 760 F.Supp. 923 (D.D.C.1991)

and *Animal Legal Defense Fund v. Madigan*, 781 F.Supp. 797 (D.D.C.1992), *vacated by ALDF I*, "this provision limits the Secretary's discretion to determining whether a warm-blooded animal is used, or intended for use for those purposes specified in the definition," 781 F.Supp. at 800, it does not confer upon the Secretary the unbridled discretion to conclude that animals which are being used for research are not "animals" within the meaning of the Act. *See also Yeutter*, 760 F.Supp. at 928–29.

Nor can the Court conclude that the legislative history relied upon by the defendants in their Motion to Dismiss at 13–16 supports their position. The very sentence from the Committee Report[7] upon which defendants rely was carefully considered by Judge Richey in *Madigan*, and as he found, "this single sentence does not provide much support in light of an overall reading of the legislative history, which supports the plaintiffs' view of the statute." 781 F.Supp. at 802 (citation omitted).[8]

In sum, the Court is persuaded by Judge Richey's reasoning in *Yeutter* and *Madigan* and rejects the defendants' argument that the plaintiffs' case should be dismissed on the grounds that the Secretary has unreviewable discretion to exclude birds, rats, and mice from the AWA's protection.

## III. STAY

Defendants urge the Court to exercise its discretionary power to stay this case pending the outcome of plaintiffs' petition for rulemaking. While this action may become moot at some future point, there is no basis at this time for the Court to conclude that the matter should be stayed

7. H.R.Rep., No. 91–1651, 91st Cong., 2d Sess. 6, *reprinted in* 1970 U.S.Code & Ad.News 5103, 5108 ("Committee Report").

8. Further references to legislative history provide little guidance given the fact that in 1970, a proposed amendment to include "any warm-blooded animal, as determined by the

Secretary" was rejected, *see* Hearings on H.R. 13957 before the Subcomm. On Livestock and Grains of the House Comm. on Agriculture, 91st Cong., 2d Sess., at 84 (1970), but Congress also rejected the originally proposed legislation in 1970 which defined "animal" to cover all warm-blooded animals. *Id.* at 102.

as premature. At the moment, rats, mice and birds are not covered by the AWA, and if plaintiffs ultimately prevail, the status quo will have to change. The agency has consistently refused to regulate these animals since 1970, and no purpose would be served by requiring plaintiffs to wait and see if history will repeat itself.

## IV. THE REASONABLENESS OF THE AGENCY'S INTERPRETATION

Defendants' final argument is that if there is jurisdiction to review the agency's regulatory exclusion of certain animals from the AWA, the Court should accord deference to the agency's interpretation and uphold it as a reasonable interpretation of the Act. While defendants may be correct, this issue cannot be decided on a motion to dismiss, but must await a motion for summary judgment.

## CONCLUSION

For the above reasons, the defendants' Motion to Dismiss is **DENIED** on the grounds that plaintiff Gausz has standing and that the agency's action is not insulated from judicial review.